CORRIGAN, J.
We granted leave to appeal in these two cases to determine whether an “intermediate sanction” described in MCL 769.31(b) and MCL 769.34(4) constitutes a maximum sentence under Blakely v Washington, 542 US 296; 124 S Ct 2531; 159 L Ed 2d 403 (2004), for which the facts supporting a departure must be found by a jury beyond a reasonable doubt or admitted by the defendant. We conclude that because Michigan has a true indeterminate sentencing scheme, an intermediate sanction is not a maximum sentence that is governed by Blakely.
Under Michigan law, the maximum portion of a defendant’s indeterminate sentence is prescribed by MCL 769.8(1), which requires a sentencing judge to impose no less than the prescribed statutory maximum sentence as the maximum sentence for most felony convictions. Michigan’s unique law requiring the imposition of an intermediate sanction upon fulfillment of the conditions of MCL 769.34(4)(a) does not alter the maximum sentence that is required upon conviction and authorized by either the jury verdict or the guilty plea.[1] Rather, the conditional *604 limit on incarceration contained in MCL 769.34(4)(a) is a matter of legislative leniency, giving a defendant the opportunity to be incarcerated for a period that is less than that authorized by the jury verdict or the guilty plea, a circumstance that does not implicate Blakely,[2]
Finally, even if an intermediate sanction were a statutoiy maximum for purposes oí Blakely and the sentencing courts in these cases violated Blakely, we conclude that any error was harmless. In both cases, the facts used by the sentencing judges to support the sentence were uncontested and supported by overwhelming evidence, such that we are convinced beyond a reasonable doubt that a jury would have reached the same result. Accordingly, we affirm the defendants’ convictions and sentences.
I. FACTS AND PROCEDURAL HISTORY
A. PEOPLE v HAMPER
On February 14, 2005, defendant Harper pleaded guilty of larceny in a building, which is a class G offense that carries a statutory maximum sentence of four years’ imprisonment.[3] He admitted that, between December 11 and December 16, 2004, he stole coats from *605 his employer, the Old News Boys of Flint, a nonprofit organization that solicits donations to aid needy famines in Flint. Harper then sold some of the coats.
As part of the plea agreement, the prosecutor dismissed a related embezzlement charge.[4] The prosecutor also agreed not to seek an enhanced sentence based on Harper’s status as a fourth-offense habitual offender.[5] The parties made no other agreement regarding Harper’s sentence.
Harper did not contest that his criminal record included two prior convictions for high severity felonies, three prior convictions for low severity felonies, and one prior misdemeanor conviction. Accordingly, he received an overall prior record variable (PRV) score of 72, based on scores of 50, 20, and 2 points, respectively, for PRV 1, PRV 2, and PRV 5.[6] His offense variable (OV) score consisted of the five points he received under OV 16, because his offense caused property with a value of $1,000 or more but not more than $20,000 to be “obtained, damaged, lost or destroyed.”[7] These scores placed him in the E-I cell of the sentencing grid for class G offenses. As a result, his calculated minimum sentence range was zero to 17 months.[8]
Because his minimum sentence range had an upper limit of 18 months or less, the court was required to impose an intermediate sanction — which may include, for instance, a term of probation or a jail term of 12 months or less — unless the court stated on the record a *606 substantial and compelling reason to impose a prison term.[9] The Genesee Circuit Court concluded that departure was justified for several reasons, including Harper’s extensive criminal history. The court noted Harper’s record of three parole revocations, his history of absconding from parole, the bench warrants issued against him for failures to appear in court, and other “out of state” legal problems reflected in his presentence investigation report. The court added that the sentencing guidelines did not take into account that Harper had “ripped off a charity that was trying to do good for cold children.” Accordingly, on March 11, 2005, the court sentenced Harper to a minimum prison term of 24 months, and a maximum term of 48 months with credit for time served.
The Court of Appeals denied defendant’s delayed application for leave to appeal, citing lack of merit in the grounds presented. Harper then applied for leave to appeal in this Court. We granted leave to consider whether his sentence, as an upward departure from an intermediate sanction, violated his constitutional right to have “ ‘any fact that increases the penalty for a crime beyond the prescribed statutory maximum ... submitted to a jury, and proved beyond a reasonable doubt.’ ” Blakely, supra at 301, quoting Apprendi v New Jersey, 530 US 466, 490; 120 S Ct 2348; 147 L Ed 2d 435 (2000).[10]
B. PEOPLE v BURNS
In July 2002, defendant Burns pleaded guilty of attempted breaking and entering of a building. His recommended minimum sentence range under the *607 guidelines was zero to 11 months, which placed him in an intermediate sanction cell. Burns was placed on probation for three years. Among the conditions of probation were that he must not violate the law, that he must not engage in threatening or assaultive behaviors, and that he must avoid alcohol and illegal drug consumption.
In June 2005, Burns was charged with four counts of violating the terms of his probation: using alcohol, committing fourth-degree criminal sexual conduct, engaging in harassment, and engaging in assaultive behavior. Burns pleaded not guilty to the probation violation charges.
A probation violation hearing was held. Two 18-year-old women testified that Burns had approached them near a boat ramp on Lake Michigan in Ottawa County. After engaging in small talk, Burns asked one of the women if she gave “good head.” He also touched the woman on the buttocks and commented that it was “nice.” Burns asked the other woman similar sexual questions and put his arm around her. The two women wrote down Burns’s license plate number and reported the incident to the police.
A police officer came to investigate the complaint. The officer stopped Burns’s boat. The two women identified Burns as the person who had assaulted them. Although Burns initially denied that the incident had occurred, he eventually admitted to the officer that he had asked the women if they knew how to give “a blow job.” He also admitted that he had touched one woman on the buttocks and the other on the shoulder. He further told the officer that he had consumed about six beers and was “buzzed.” Burns was administered a preliminary breath test that registered a blood alcohol level above the legal limit.
*608 Burns called no witnesses and presented no evidence at the probation violation hearing. The trial court found, by a preponderance of the evidence, that Burns had been intoxicated, that he had committed fourth-degree criminal sexual conduct, and that he had done so in an intimidating, aggressive manner.
At the probation violation sentencing, the trial court departed from the original guidelines recommendation of zero to 11 months and imposed a sentence of 18 months to 5 years. The court explained its decision:
Well, I’m glad to hear that you’ve found religion and the reason to — it can give some meaning to your life. It doesn’t however change what you did here. You know, there wasn’t any question but that you did this to these young girls. I don’t understand in a sense why you put them through taking the stand and testify [sic] to the whole thing, because there wasn’t any issue, you did it. It expresses an attitude to me that is very puzzling. It’s kind of a mean spirited thing that you did. Not that you didn’t have a perfect right to do it, I would never dispute your right to a hearing and to have testimony confirm it, but it wasn’t a close case, it was a clear cut case of a great deal of abuse on your part. You were about as intimidating and — to those young girls and you scared the devil out of them.
It’s a difficult thing to understand how you could publicly do that to people, young girls you didn’t even know, you didn’t have any — it was gross, it was very gross. Very intimidating.
I suspect because of the fact that you fondled the one young lady you’re probably going to be looking at some serious time in Holland if you’re convicted [of fourth-degree criminal sexual conduct]. I suspect you will be because the girls told the story very honestly in my opinion. You’re very likely going to get convicted and go to prison for that one.
I seldom ever exceed guidelines, in fact I can’t recall a time that I have, but I’m going to in your case. The *609 behavior that you exhibited here certainly is not or was not contemplated in arriving at your original guidelines. It was gross, it was abusive, and I believe there’s a compelling reason to exceed guidelines.
It’s the sentence of this Court that you be committed to the Michigan Department of Corrections for a term of 18 months to a maximum of 5 years. You have credit I believe for 142 days in the county jail.
On the departure evaluation form, the court stated that the original guidelines recommendation of zero to 11 months failed “to consider [defendant’s] violation behavior — which constitutes a substantial and compelling reason for a moderate departure ... .”[11]
Burns moved for resentencing, arguing that the fact that his sentence exceeded the guidelines range on the basis of facts neither admitted by him nor found by a jury beyond a reasonable doubt violated his due process rights under Blakely. The trial court denied the motion because this Court had stated in People v Claypool, 470 Mich 715, 730 n 14; 684 NW2d 278 (2004), that Blakely did not apply to Michigan’s indeterminate sentencing system. The court further explained:
Therefore, the Court was not required to find Defendant guilty of 4th Degree Criminal Sexual Conduct beyond a reasonable doubt in order to consider that behavior for the purpose of exceeding guidelines. The Court found objective and verifiable evidence on the record, including Defendant’s admission to the public safety officer that he touched the victim’s “butt” and the uncontroverted testimony of the victims themselves that Defendant was harass *610 ing and intimidating. Such evidence was not considered in the original sentencing, and the Court maintains that Defendant’s behavior constituted substantial and compelling reasons for exceeding statutory guidelines.
The Court of Appeals denied Burns’s application for leave to appeal for lack of merit in the grounds presented. Bums then sought leave to appeal in this Court. We granted the application and directed the parties to address whether an intermediate sanction described in MCL 769.31(b) and MCL 769.34(4) is a statutory maximum sentence under Blakely “for which the departure reasons must be decided by a jury or admitted by the defendant, where the defendant is being sentenced for a violation of probation.” 477 Mich 933 (2006).
II. STANDARD OF REVIEW
We review de novo questions of constitutional law. People v Nutt, 469 Mich 565, 573; 677 NW2d 1 (2004).
III. ANALYSIS
A. MICHIGAN’S STATUTORY SENTENCING SCHEME UNDER BLAKELY
Under the Due Process Clause of the Fifth Amendment and the jury trial guarantees of the Sixth Amendment, any fact that increases the maximum penalty for a crime must be submitted to a jury and proven beyond a reasonable doubt.[12] The Fourteenth Amendment requires that the states’ criminal sentencing schemes conform to this rule.[13] The rule includes exceptions for the fact of prior convictions and any facts admitted by the defendant.[14]
*611 Accordingly, when sentencing a defendant, a judge may not exceed the maximum sentence authorized by the jury verdict or the guilty plea except on the basis of the facts reflected in the jury verdict, the facts admitted by the defendant, and the defendant’s record of prior convictions. In other words, the statutory maximum, for Blakely purposes, is the maximum sentence a judge may impose “without any additional findings.” Blakely, supra at 304. In the wake of Blakely, state courts have been called upon to define the relevant statutory máximums within which judges may continue to exercise the traditional sentencing discretion legislatures afford them.
The first question in this inquiry involves whether a state’s sentencing scheme is determinate or indeterminate. As we have previously explained, under a determinate scheme, conviction for an offense typically exposes a defendant to a sentence of a fixed term lying in a standard range for that offense.[15] In Blakely, for instance, Washington’s scheme prescribed a “standard range” of 49 to 53 months for the defendant’s conviction of second-degree kidnapping with a firearm.[16] A judge was authorized to depart beyond the standard range on the basis of “ ‘substantial and compelling reasons justifying an exceptional sentence.’ ”[17] The statute permitted the reasons for departure to be based on facts found by the sentencing judge.[18] In Blakely, the judge sentenced the defendant to an exceptional 90-month sentence on the basis of the judge’s finding that the defendant perpetrated the kidnapping with “delib *612 erate cruelty.”[19] Accordingly, the sentence violated the defendant’s constitutional rights because it exceeded the fixed statutory maximum sentence range that was authorized solely by the facts that the defendant admitted when he pleaded guilty of second-degree kidnapping.[20]
In contrast, under an indeterminate scheme, a defendant receives a minimum sentence and a maximum sentence. In Michigan, for instance, the law provides that the maximum portion of a defendant’s indeterminate sentence must be the “maximum penalty provided by law . . . .”[21] As will be explained in detail later in this *613 opinion, the sentencing judge ascertains the minimum portion of a defendant’s indeterminate sentence by calculating the minimum sentence range under the statutory sentencing guidelines, which consider the circumstances of the crime as well as the defendant’s criminal history. The judge may exceed the statutorily recommended minimum sentence range in a particular case if the judge finds a “substantial and compelling reason” to depart that the guidelines do not adequately take into account.[22] While the sentencing judge fixes the minimum portion of a defendant’s indeterminate sentence, a defendant is still liable to serve his maximum sentence and may only be released before the maximum term has expired at the discretion of the parole board.[23]
Thus, under an indeterminate sentencing scheme like Michigan’s, judicial fact-finding does not present the same constitutional problems as judicial fact-finding used to exceed the statutory maximum under a determinate scheme,[24] because judicial fact-finding under our scheme never affects the statutory maximum sentence that was authorized by the jury verdict of *614 guilty or the defendant’s guilty plea.[25] As the Blakely Court observed in distinguishing the two types of schemes:
[T]he Sixth Amendment by its terms is not a limitation on judicial power, but a reservation of jury power. It limits judicial power only to the extent that the claimed judicial *615 power infringes on the province of the jury. Indeterminate sentencing does not do so. It increases judicial discretion, to be sure, but not at the expense of the jury’s traditional function of finding the facts essential to lawful imposition of the penalty. Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal right to a lesser sentence — and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned. In a system that says the judge may punish burglary with 10 to 40 years, every burglar knows he is risking 40 years in jail. In a system that punishes burglary with a 10-year sentence, with another 30 added for use of a gun, the burglar who enters a home unarmed is entitled to no more than a 10-year sentence .... [Blakely, supra at 308-309.]
Similarly, as we observed in People v Drohan, 475 Mich 140, 162; 715 NW2d 778 (2006), in Michigan, “the trial court’s power to impose a sentence is always derived from the jury’s verdict, because the ‘maximum-minimum’ sentence will always fall within the range authorized by the jury’s verdict.” For this reason, a defendant’s constitutional rights are not violated when a sentencing judge exceeds the recommended minimum sentence range on the basis of a substantial and compelling reason, as the respective judges did in these cases; even an upward departure from the guidelines may not exceed the maximum penalty provided by law. Id. at 162 n 15. Therefore, we reaffirm our holding in Drohan that Michigan’s indeterminate sentencing scheme is valid under Blakely. Id. at 162-164.
B. MICHIGAN’S INTERMEDIATE SANCTION CELLS
Nonetheless, defendants argue that at least one aspect of Michigan’s sentencing scheme violates *616 Blakely. They claim that, when the guidelines minimum sentence range calls for an intermediate sanction, as it did in these cases, the intermediate sanction becomes the relevant statutory maximum sentence under Blakely and a defendant is constitutionally entitled to such a sanction. Accordingly, they claim that a judge may not exceed the range of intermediate sanction options by sentencing a defendant to an indeterminate prison term, even if the judge has a substantial and compelling reason to do so. We disagree. Blakely prohibits a judge from exceeding the maximum sentence authorized by the jury verdict or the guilty plea. Blakely does not, as defendants would have it, entitle a defendant to a sentence that is less than the one authorized by the verdict or plea.
A defendant’s recommended minimum sentence range under the guidelines is determined on the basis of the defendant’s record of prior convictions (the PRV score), the facts surrounding his crime (the OV score), and the legislatively designated offense class.[26] A court must generally sentence a defendant to a minimum prison term within the guidelines range[27] unless it states on the record a substantial and compelling reason to depart.[28] A substantial and compelling reason “exists only in exceptional cases,” and is an “objective and verifiable” reason that “keenly or irresistibly grabs our attention” and is “of considerable worth in deciding the length of a sentence ... .”[29] Departure may not be based on certain qualities of the defendant, such as *617 gender, race, or employment status.[30] Departure also may not be based on “an offense characteristic or offender characteristic already taken into account in determining the appropriate sentence range unless the court finds from the facts contained in the court record, including the presentence investigation report, that the characteristic has been given inadequate or disproportionate weight.” MCL 769.34(3)(b). Finally, a minimum sentence, including a departure, may not exceed 2h of the statutory maximum sentence.[31]
When the upper and lower limits of the recommended minimum sentence range meet certain criteria, a defendant is eligible for an intermediate sanction. If the upper limit of the minimum sentence range exceeds 18 months and the lower limit is 12 months or less, the defendant’s sentence range is in a “straddle cell.”[32] When the range is in a straddle cell, the sentencing court may elect either to sentence the defendant to a prison term with the minimum portion of the indeterminate sentence within the guidelines range or to impose an intermediate sanction, absent a departure.[33] If the upper limit of the minimum sentence range is 18 months or less, as it was in these cases, the cell containing the range is an “intermediate sanction cell.” Under these circumstances, the statute provides that
the court shall impose an intermediate sanction unless the court states on the record a substantial and compelling reason to sentence the individual to the jurisdiction of the *618 department of corrections. An intermediate sanction may include a jail term that does not exceed the upper limit of the recommended minimum sentence range or 12 months, whichever is less. [MCL 769.34(4)(a).]
MCL 769.31(b) defines “intermediate sanction” as “probation or any sanction, other than imprisonment in a state prison or state reformatory, that may lawfully be imposed. Intermediate sanction includes, but is not limited to, 1 or more of” several options, including probation with any conditions authorized by law, probation with jail, treatment for substance abuse or mental health conditions, and other options such as house arrest and community service.[34] Defendants argue that, because the statute states that the sentencing *619 court “shall” impose an intermediate sanction, they were constitutionally entitled under Blakely to either a jail term of 12 months or less or one or more of the other intermediate sanction options available to the sentencing court.
Most significantly, they cite Cunningham v California, 549 US_; 127 S Ct 856; 166 L Ed 2d 856 (2007), in which the United States Supreme Court examined California’s determinate sentencing law (DSL), which contains language that is superficially similar to the language describing intermediate sanction cells in MCL 769.34(4)(a) quoted above.[35] In Cunningham, the defendant was tried and convicted of continuous sexual abuse of a child under the age of 14.[36] The statute defining the offense prescribed three precise terms of imprisonment —lower, middle, and upper terms of 6, 12, and 16 years, respectively.[37] The statute that controlled which term a sentencing judge should impose provided that “ ‘the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime.’ ”[38] Circumstances in aggravation or mitigation were to be determined by the court after considering the trial record, the probation officer’s report, statements submitted by the parties, the victim, or the *620 victim’s family, and “ ‘any further evidence introduced at the sentencing hearing.’ ”[39] The judge in Cunningham sentenced the defendant to the 16-year upper term on the basis of the judge’s findings of aggravating facts, including the particular vulnerability of the victim and the defendant’s violent conduct, which indicated a serious danger to the community.[40]
The Cunningham Court concluded that the sentence violated the defendant’s rights because
an upper term sentence may be imposed only when the trial judge finds an aggravating circumstance.... An element of the charged offense, essential to a jury’s determination of guilt, or admitted in a defendant’s guilty plea, does not qualify as such a circumstance.... Instead, aggravating circumstances depend on facts found discretely and solely by the judge. In accord with Blakely, therefore, the middle term prescribed in California’s statutes, not the upper term, is the relevant statutory maximum. 542 U.S., at 303, 124 S.Ct. 2531 (“[T]he ‘statutory maximum’ for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.” (emphasis in original)). Because circumstances in aggravation are found by the judge, not the jury, and need only be established by a preponderance of the evidence, not beyond a reasonable doubt,... the DSL violates Apprendi’s bright-line rule: Except for a prior conviction, “any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.” 530 U.S., at 490, 120 S.Ct. 2348. [Cunningham, supra, 127 S Ct at 868.]
Defendants argue that MCL 769.34(4)(a), which similarly provides that the court “shall impose an intermediate sanction unless the court states on the *621 record a substantial and compelling reason to sentence the individual to the jurisdiction of the department of corrections,” renders their sentences indistinguishable from the invalid sentence in Cunningham. We hold that the superficial similarity of the statutory language in California’s determinate scheme does not transform Michigan’s intermediate sanction cells into the relevant statutory máximums for Blakely purposes. Rather, the similar language in MCL 769.34(4)(a) yields a different result when read in the context of Michigan’s indeterminate scheme.
Statutes that address the same subject or share a common purpose are in pari materia and must be read together as a whole.[41] This general rule not only applies to our interpretation of Michigan’s sentencing scheme, it requires us to examine it in the context of related statutes, including laws defining intermediate sanctions such as probation.[42] Further, we presume that a statute is constitutional. “We exercise the power to declare a law unconstitutional with extreme caution, and we never exercise it where serious doubt exists with regard to the conflict.” Phillips v Mirac, Inc, 470 Mich 415, 422; 685 NW2d 174 (2004).[43]
Michigan’s sentencing laws clearly require that the maximum portion of every indeterminate sentence be *622 no less than the “maximum penalty provided by law...MCL 769.8(1). Thus, the “ ‘statutory maximum’ for Apprendi purposes,” or “the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant, ”[44] is the maximum term set by statute for each enumerated offense.[45] Thus, when Harper pleaded guilty of larceny in a building, his guilty plea alone required the imposition of a maximum sentence of four years’ imprisonment. Similarly, when Burns pleaded guilty of attempted breaking and entering, his conviction required the imposition of a five-year maximum sentence. The guidelines calculations, which might result in an intermediate sanction cell, relate solely to a defendant’s recommended minimum sentence range. The guidelines do nothing to alter or affect the maximum sentence that must be imposed solely on the basis of the jury verdict or the guilty plea. The language of our sentencing scheme makes this clear in several ways.
MCL 769.8 describes a judge’s general sentencing powers and duties:
(1) When a person is convicted for the first time for committing a felony and the punishment prescribed by law for that offense may be imprisonment in a state prison, the court imposing sentence shall not fix a definite term of imprisonment, but shall fix a minimum term, except as otherwise provided in this chapter. The maximum penalty provided by law shall be the maximum sentence in all cases except as provided in this chapter and shall be stated by the judge in imposing the sentence.
*623 (2) Before or at the time of imposing sentence, the judge shall ascertain by examining the defendant under oath, or otherwise, and by other evidence as can be obtained tending to indicate briefly the causes of the defendant’s criminal character or conduct, which facts and other facts that appear to be pertinent in the case the judge shall cause to be entered upon the minutes of the court. [Emphasis added.]
Thus, the statute requires that a judge “shall fix a minimum term,” but “\t\he maximum penalty provided by law shall be the maximum sentence in all cases ....” MCL 769.8(1) (emphasis added). Although each mandate is modified by “except as otherwise provided in this chapter” or “except as provided in this chapter,” respectively, this or similar language has been included in the statute since it was enacted in 1927.[46] Accordingly, this language creating an exception to the rule that “[t]he maximum penalty provided by law shall be the maximum sentence” was not originally aimed at intermediate sanction cells; intermediate sanction cells were first suggested in the sentencing scheme in 1994 and are a mandatory component of sentencing only for crimes committed after January 1, 1999.[47] Therefore, it takes further examination of the statutory scheme to discern whether intermediate sanctions are meant to be exceptions to the rule.
The Legislature explicitly described exceptions to indeterminate sentencing in our sentencing scheme. For example, MCL 769.9(1) provides: “The provisions of this chapter relative to indeterminate sentences shall not apply to a person convicted for the commission of an offense for which the only punishment prescribed by *624 law is imprisonment for life.” Similarly, MCL 769.9(2) addresses cases in which the sentencing judge has the option to impose a sentence of either life imprisonment or a term of years. If the judge imposes a sentence of life imprisonment, the judge may not also impose a separate minimum sentence. MCL 769.9(2). As we noted previously, the Legislature also explicitly provided for determinate sentences for a limited number of particular offenses, such as possession of a firearm during the commission of a felony, MCL 750.227b. In contrast, nowhere did the Legislature state that intermediate sanctions are an exception to indeterminate sentencing.
To the contrary, intermediate sanctions are an explicit component of the statutory scheme for setting a defendant’s minimum sentence. A sentencing court calculates a defendant’s PRVs and OVs in order to determine “the recommended minimum sentence range.” MCL 777.21(1) (emphasis added). MCL 769.34 governs the courts’ application of the guidelines and consistently addresses the minimum sentence range. For instance, MCL 769.34(2) provides:
Except as otherwise provided in this subsection or for a departure from the appropriate minimum sentence range provided for under subsection (3), the minimum sentence imposed by a court of this state for a felony enumerated in part 2 of chapter XVII committed on or after January 1, 1999 shall be within the appropriate sentence range under the version of those sentencing guidelines in effect on the date the crime was committed.
Subsection 4 defines intermediate sanction cells on the basis of the upper and lower limits of the “recommended minimum sentence range.” MCL 769.34(4)(a) and (c) (emphasis added). The statutory maximum for the relevant offense — which is the maximum *625 authorized by the conviction and therefore the relevant maximum for Blakely purposes — has never changed.
That the statutory maximum is not altered by an intermediate sanction cell becomes particularly evident when we consider the range of intermediate sanctions available to the sentencing judge. Most significantly, judges commonly impose a term of probation, which may also be combined with other sanctions such as jail or substance abuse treatment.[48] Accordingly, the nature of a probationary sentence aids our understanding of whether the Legislature intended intermediate sanctions to constitute maximum terms for Blakely purposes.
MCL 771.1(1), originally enacted in 1927,[49] authorizes a sentencing judge to impose probation in lieu of prison for most crimes if the judge “determines that the defendant is not likely again to engage in an offensive or criminal course of conduct and that the public good does not require that the defendant suffer the penalty imposed by law.”[50] Thus, the imposition of probation is a *626 permissive matter left to the discretion of the sentencing judge. The Legislature provided a detailed definition of probationary sentences in MCL 771.4:
It is the intent of the legislature that the granting of probation is a matter of grace conferring no vested right to its continuance. If during the probation period the sentencing court determines that the probationer is likely again to engage in an offensive or criminal course of conduct or that the public good requires revocation of probation, the court may revoke probation. All probation orders are revocable in any manner the court that imposed probation considers applicable either for a violation or attempted violation of a probation condition or for any other type of antisocial conduct or action on the probationer’s part for which the court determines that revocation is proper in the public interest. Hearings on the revocation shall be summary and informal and not subject to the rules of evidence or of pleadings applicable in criminal trials. In its probation order or by general rule, the court may provide for the apprehension, detention, and confinement of a probationer accused of violating a probation condition or conduct inconsistent with the public good. The method of hearing and presentation of charges are within the court’s discretion, except that the probationer is entitled to a written copy of the charges constituting the claim that he or she violated probation and to a probation revocation hearing. The court may investigate and enter a disposition of the probationer as the court determines best serves the public interest. If a probation order is revoked, the court may sentence the probationer in the same manner and to the same penalty as the court might have done if the probation order had never been made. [Emphasis added.]
Thus, probation is, by definition, “a matter of grace conferring no vested right to its continuance.” When a judge imposes a sentence of probation, the Legislature intended that probation be revocable on the basis of a judge’s findings of fact at an informal hearing, and largely at the judge’s discretion. Indeed, a judge may *627 revoke probation for “antisocial conduct or action on the probationer’s part for which the court determines that revocation is proper in the public interest.” Id.
In accord, the United States Supreme Court has recently reaffirmed that probation revocation hearings may be “ ‘proceedings in which the trial rights of a jury and proof beyond a reasonable doubt, among other things, do not apply.’ ” Samson v California, 547 US 843,_; 126 S Ct 2193, 2198; 165 L Ed 2d 250 (2006), quoting United States v Knights, 534 US 112, 120; 122 S Ct 587; 151 L Ed 2d 497 (2001). “Inherent in the very nature of probation is that probationers ‘do not enjoy “the absolute liberty to which every citizen is entitled.” ’ ” Knights, supra at 119 (citations omitted). Cf. United States v Cranley, 350 F3d 617, 621 (CA 7, 2003) (“ [I]t has long been understood that a fundamental and unchallenged condition of probation is that the probationer surrender his right to trial by jury should the government seek revocation, and thus imprisonment.”).
Moreover, for this reason, federal courts observe that the rule of Blakely and Apprendi does not apply to probation revocation hearings. In the words of the Court of Appeals for the Second Circuit,
a sentence of supervised release by its terms involves a surrender of certain constitutional rights and this includes surrender of the due process rights articulated in Apprendi
... Given a prior conviction and the proper imposition of conditions on the term of supervised release, when a defendant fails to abide by those conditions the government is not then put to the burden of an adversarial criminal trial. [United States v Carlton, 442 F3d 802, 809 (CA 2, 2006), quoted with approval by United States v Cordova, 461 F3d 1184, 1187 (CA 10, 2006).]
*628 The Court of Appeals for the Ninth Circuit recently reached the same conclusion when addressing arguments similar to those advanced by defendant Burns. In United States v Ray, 484 F3d 1168, 1169 (CA 9, 2007), the defendant was initially sentenced to a short prison term, followed by a three-year term of supervised release. She later admitted that she had violated certain conditions of the release, and the court revoked her supervised release. Id. She argued that her maximum term of imprisonment for purposes of resentencing was the high end of her federal sentencing guidelines range, rather than the statutory maximum imposed by the United States Code. Id. at 1170. The court observed that the courts of appeals in the First, Second, and Fifth circuits had already rejected this argument in the supervised release context. Id. at 1171-1172. Further, the federal circuits had unanimously rejected the same argument in the analogous context of resentencing after revocation of probation. See id. at 1172. The Ninth Circuit held:
We now join our sister circuits in holding that [United States v Booker, 543 US 220; 125 S Ct 738; 160 L Ed 2d 621 (2005), the counterpart to Blakely in the federad sentencing context,] does not define the “statutory maximum” as the high end of the Guidelines range for sentences imposed for violations of supervised release. Instead, the definition of “statutory maximum” continues to come from the United States Code. We may not modify Congress’ clear intent that the statutory maximum determines the allowable period of imprisonment after the revocation of supervised release, even if the Guidelines prescribed a lower maximum sentence for the particular defendant. [Id. at 1171.][51]
*629 Perhaps most significantly, the Michigan Legislature did not modify or repeal the probation statutes when it enacted the mandatory sentencing guidelines. Rather, the statutes inform each other. The limits of a sentence that includes probation are defined in MCL 771.1 et seq., which provide, for instance, time limits for probationary sentences on the basis of the crime committed. See, e.g., MCL 771.2; MCL 771.2a. Indeed, the statute defining intermediate sanction cells, MCL 769.34(4) (a), does not define or limit available intermediate sanctions; it merely relies on and reiterates definitions of intermediate sanctions provided by other statutes. Crucially, the mandate in MCL 769.34(4)(a) that a jail term imposed as part of an intermediate sanction may not “exceed the upper limit of the recommended minimum sentence range or 12 months, whichever is less,” reit *630 erates a mandate from the probation statutes that long preceded the enactment of MCL 769.34.[52] MCL 771.3(2) provides, in part:
As a condition of probation, the court may require the probationer to do 1 or more of the following:
(a) Be imprisoned in the county jail for not more than 12 months, at the time or intervals, which may be consecutive or nonconsecutive, within the probation as the court determines. However, the period of confinement shall not exceed the maximum period of imprisonment provided for the offense charged if the maximum period is less than 12 months. [Emphasis added.]
Thus, first, the 12-month limitation, as restated in MCL 769.34(4)(a), is not a new, independent limit on jail time established by the sentencing guidelines in the intermediate sanction cell context. Second, the nature of a probationary sentence clearly reveals the Legislature’s intent that the 12-month limit on incarceration may be exceeded, even when jail time is imposed pursuant MCL 769.34(4)(a). “Probation with jail” is explicitly listed as an intermediate sanction in MCL 769.31(b)(ic). Yet if a judge imposes an initial jail term of 12 months or less with a term of probation, the term of probation effectively becomes meaningless.[53] For if a judge may never impose additional imprisonment, he is unable to revoke probation. This is because, when revoking probation, “the court may sentence the probationer in the same manner and to the same penalty as *631 the court might have done if the probation order had never been made.” MCL 771.4. But to avoid placing a defendant in double jeopardy by punishing him twice for the same offense, a judge must subtract the initial jail term from any term of incarceration he imposes upon revocation and resentencing.[54] If the judge could not depart upward by considering postprohation factors, such as the defendant’s probation-violating behavior, the judge would be effectively unable to revoke probation or resentence the defendant because the judge would have exhausted his ability to impose jail time. The same problem would occur even when a judge initially sentenced a defendant only to probation; if the defendant continually violated probation after multiple revocations and one or more short jail sentences, the judge would quickly lose the ability to revoke probation by exhausting the 12 months of available jail time. The overall result would be essentially to make 12 months of jail or less the only sanction truly available to judges in the intermediate sanction cell context; after a defendant had served 12 months in jail, a judge would have no means to enforce the conditions of other sanctions such as probation.[55]
In sum, we find no basis for the conclusion that the Legislature intended an intermediate sanction to become a new statutory maximum for Blakely purposes *632 when a defendant’s minimum sentence range is in an intermediate sanction cell.[56] To hold otherwise ignores the definition and function of intermediate sanctions such as probation and deprives them of their intended effect. Further, imposition of an intermediate sanction never affects the maximum sentence “provided by law,” MCL 769.8(1), as listed in MCL 777.11 et seq., for the crime of which the defendant has been convicted. When statutes, such as those listed in MCL 777.11 et seq., establish absolute maximum sentences on the basis of the elements of the offense, it is entirely within a legislature’s province to authorize judges to exercise their discretion and expertise when sentencing defendants below those maximum limits, as they do by sentencing and monitoring probationers, as well as by subsequently revoking a probationary sentence, if appropriate. As Justice Kennedy lucidly explained in his plurality opinion in Harris v United States, 536 US 545, 567; 122 S Ct 2406; 153 L Ed 2d 524 (2002) (Kennedy, J, joined by Rehnquist, C.J., and O’Connor and Scalia, JJ):
Read together, McMillan [v Pennsylvania, 477 US 79; 106 S Ct 2411; 91 L Ed 2d 67 (1986)] and Apprendi mean that those facts setting the outer limits of a sentence, and of the judicial power to impose it, are the elements of the *633 crime for the purposes of the constitutional analysis. Within the range authorized by the jury’s verdict, however, the political system may channel judicial discretion — and rely upon judicial expertise — by requiring defendants to serve minimum terms after judges make certain factual findings.
Our Legislature clearly limits sentencing judges’ exercise of discretion when it sees fit to do so, as exemplified by the crimes for which judges must impose statutorily mandated terms, such as life in prison, MCL 769.9(1), or a determinate number of years, MCL 750.227b. Blakely does not foreclose the Legislature’s concomitant ability to define circumstances under which a judge may exercise sentencing discretion within the outer limit authorized by the jury verdict, as in the intermediate sanction context.
In Michigan, every offender is on notice of the maximum sentence to which he is subject on the basis of the elements of the crime when he is convicted either by a jury or as the result of a plea, as is exemplified by these cases. In Harper, for instance, before Harper pleaded guilty of larceny in a building the judge informed him, as required by MCR 6.302(B)(2), that the maximum penalty for the crime is four years in prison.[57] The judge also specifically responded when Harper stated that he had heard that the judge “was a fair judge and wouldn’t go over the guidelines ....” The judge explained, first, that lawyers’ initial guidelines estimations are often wrong. The judge added:
... I don’t know what your history is, I might wanna drop a big hammer on you or I might just decide to give you a feather and tell you to walk out of the door, I don’t know what I’m going to do and I’m not making any predictions today....
*634 When asked if he understood this, Harper responded: “Yes, sir, your Honor.” When asked if anyone had told him that the judge would “go easy on” him, Harper answered: “No, sir.” The judge continued:
Now, I’ve asked you all those kinds of questions because you could file an appeal later on and you could say that there was something else going on, for example, like Mr. Harper could say that his lawyer promised him that he would get no worse than jail or probation and I decide to send him off to prison ....
Finally, just before Harper established the factual basis for his plea, the judge explained:
... I could sentence you to go to jail, or I could sentence you to probation, or I could fine you up to 5,000 dollars, I can make you pay a bunch of court cost[s], I could even send you off to prison as long as four years, do you understand?
Harper responded: “Yes, sir.”[58]
In contrast, the defendant in Cunningham did not have the same expectation under California’s DSL. California’s determinate scheme was premised on a defendant’s right to a fixed, middle term sentence. The DSL then permitted the judge, after conviction, to sentence a defendant to a higher or lower term based on judicial fact-finding.[59] Thus, upon conviction of continuous sexual abuse of a child, the Cunningham defendant had a legal entitlement to the statutory middle term of 12 years’ imprisonment. The sentencing judge violated Blakely by sentencing him to 16 years on the basis of *635 the judge’s own findings.[60] Significantly, the Supreme Court of California attempted to justify its scheme based on its conclusion that, “ ‘in operation and effect,’ ... the DSL ‘simply authorize^] a sentencing court to engage in the type of factfinding that traditionally has been incident to the judge’s selection of an appropriate sentence within a statutorily prescribed sentencing range.’ ” Cunningham, supra, 127 S Ct at 868, quoting People v Black, 35 Cal 4th 1238, 1254; 29 Cal Rptr 3d 740; 113 P3d 534 (2005), vacated sub nom Black v California_US_; 127 S Ct 1210 (2007). The Cunningham Court rejected this reasoning, stating: “If the jury’s verdict alone does not authorize the sentence, if, instead, the judge must find an additional fact to impose the longer term, the Sixth Amendment requirement is not satisfied.” Cunningham, supra, 127 S Ct at 869.
Michigan’s scheme is inherently different from California’s DSL, however, as we have explained. We need not attempt to invoke sentencing judges’ traditional discretion in order to avoid the plain language of our statute. Under the plain language of the DSL, the elements of the crime entitled a defendant to a presumptive middle term. Therefore, the DSL is like the hypothetical determinate system described in Blakely “that punishes burglary with a 10-year sentence, with another 30 added for use of a gun... .”[61] In such a system, “the burglar who enters a home unarmed is entitled to no more than a 10-year sentence... .”[62] Under the plain language of our sentencing scheme, on the other hand, Harper was entitled to the statutory maximum of four years’ imprisonment when he pleaded *636 guilty of larceny in a building, as he agreed he was fully aware, and Burns was entitled to the statutory maximum of five years’ imprisonment when he pleaded guilty of attempted breaking and entering of a building. Thus, our system mirrors the Blakely Court’s hypothetical indeterminate system “that says the judge may punish burglary with 10 to 40 years,” and, therefore, under which “every burglar knows he is risking 40 years in jail.”[63]
Our statutes clearly describe the range of intermediate options available to the sentencing judge, and the nature and effect of those options, when a defendant’s minimum sentence range under the guidelines is in an intermediate sanction cell. A defendant is not entitled to a circumscribed term of prison when he qualifies for an intermediate sanction, as was the case with the middle term prescribed by California’s DSL. Rather, a Michigan defendant expects a range of possible sanctions, including jail and probation. He is also clearly aware that probation may be revoked — and that additional incarceration may therefore be imposed — at a hearing subject to a lower standard of proof than that required at trial. These clear expectations on the part of defendants are what cause us to reject Justice Kelly’s contention that “[tjhere is no meaningful difference between a Michigan court departing from an intermediate sanction cell and a California court imposing the upper term available under [the DSL].” Post at 657. A Michigan defendant is fully on notice that he never gains an entitlement to a mere 12 months in jail.
In sum, as is exemplified by these cases, Michigan’s intermediate sanction cells are part of the legislative scheme for setting a minimum sentence that is tailored to the offender’s history and the circumstances of the *637 offense. The statutes governing a sentencing court’s imposition of a minimum sentence never allow a judge to exceed the maximum sentence authorized by a jury verdict or a guilty plea. Even when a defendant’s minimum sentence range is in an intermediate sanction cell, the Legislature made clear its intent that the sentencing judge retain the discretion to exceed the list of intermediate sanctions, and to impose a minimum sentence of up to 2/3 of the statutory maximum, if an intermediate sanction is inappropriate in a given case.
When a defendant’s minimum sentence range under the guidelines is in an intermediate sanction cell, the defendant has a statutory right to an intermediate sanction, conditioned on the absence of substantial and compelling reasons to depart upward. Therefore, a defendant may appeal an upward departure on the basis of an alleged violation of this statutory right by arguing that the sentencing judge did not state on the record a legally sufficient substantial and compelling reason to depart. But the defendant does not gain a constitutional right to an intermediate sanction under Blakely. Indeed, the essence of defendants’ arguments here is that Blakely entitles them to a sentence that is less than the maximum authorized by the jury verdict or the guilty plea. But Blakely, which prohibits a judge from exceeding the maximum authorized by the jury verdict or the guilty plea, does not require this result. Allowing judges to impose any sentence that is less than the authorized maximum does not implicate a defendant’s Sixth Amendment rights because it does not usurp the jury’s task of finding the facts that set the maximum sentence. Thus, in the intermediate sanction cell context, because the defendant’s sentence never exceeds the maximum sentence authorized by the jury verdict or the guilty plea, the sentencing judge may *638 exercise his statutorily granted discretion to depart upward on the basis of facts not found by a jury.
In Harper, faced with intermediate options such as jail and probation, the sentencing judge observed several factors, including, most significantly, Harper’s record of bench warrants, his three parole revocations, and his history of absconding from parole. These factors were not included in Harper’s PRV score, and they certainly cast doubt on the appropriateness of a sentence that would again include probation. As a result, these factors alone constituted substantial and compelling reasons to sentence Harper to the jurisdiction of the Department of Corrections. Accordingly, we affirm Harper’s sentence.
In Burns, the judge found substantial and compelling reasons to exceed the guidelines on the basis of Burns’s admission to the officer that he had touched a young woman’s buttocks and the uncontroverted testimony of two young women that Bums had harassed and intimidated them. This evidence was not considered in scoring the guidelines for Bums originally because it occurred after the judge had originally sentenced Bums to three years of probation. Bums’s objective and verifiable behavior while on probation certainly provided substantial and compelling reasons to sentence Bums to the jurisdiction of the department of corrections rather than impose an intermediate sanction. Accordingly, we affirm Bums’s sentence.
C. HARMLESS ERROR UNDER BLAKELY
Finally, we find it important to note that Blakely errors are reviewed for harmless error. Accordingly, we add that even if an intermediate sanction is construed as a maximum sentence for Blakely purposes, in each of these cases, if an error occurred, it was harmless beyond a reasonable doubt.
*639 In Washington v Recuenco, _ US _; 126 S Ct 2546, 2553; 165 L Ed 2d 466 (2006), the United States Supreme Court ruled that Blakely errors are not structural, but are subject to harmless error analysis. The Court had already rejected the argument that failure to submit aggravating facts to a jury offends a “watershed” rule of criminal procedure, such that it undermines the fairness and accuracy of the overall proceeding, in Schriro v Summerlin, 542 US 348, 355-356; 124 S Ct 2519; 159 L Ed 2d 442 (2004) (holding that such errors do not offend any “watershed” rule of criminal procedure to the extent of requiring retroactive application). In Schriro, the Court explained that it could not “confidently say that judicial factfinding seriously diminishes accuracy.” Id. at 356.
Recuenco compared Blakely errors to the error analyzed in Neder v United States, 527 US 1; 119 S Ct 1827; 144 L Ed 2d 35 (1999). Neder involved a jury trial for charges that included tax fraud.[64] One element of the offenses was the materiality of the fraudulent representation on the defendant’s tax form. The trial court constitutionally erred when it failed to submit the question of materiality — as an element of the offense — to the jury and, instead, decided the issue itself.[65] The error was harmless, however, because uncontested facts presented at trial showed that the misrepresentation — which consisted of the defendant’s failure to report $5 million of income — was material. Indeed, the defendant did not suggest that he could introduce any contrary evidence, and he did not argue to the jury, or to the courts on appeal, that his false statements could be found immaterial.[66] Accordingly, *640 the judge’s conclusion that the element of materiality was proved was harmless beyond a reasonable doubt because no jury could reasonably find otherwise.[67] The Court summarized the analysis as follows: “In this situation, where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless.” Id. at 17.
Recuenco, in turn, concluded that a similar analysis is appropriate if a trial court fails to submit sentencing factors to a jury, because there is no distinction, for Sixth Amendment purposes, between an element of an offense and a sentencing factor that increases a sentence beyond the sentence authorized by the elements of the offense.[68] The Washington Supreme Court had previously held that Blakely errors are structural.[69] The Recuenco Court disagreed and remanded the case, directing the Washington courts to analyze whether the error was harmless.[70]

*642
1. HARPER

In Harper, defendant preserved the constitutional challenge to his sentence by raising this issue in a motion for resentencing before the circuit court. Thus, as in Neder, our review must consider whether the alleged error is harmless beyond a reasonable doubt.[71]
The sentencing judge here exceeded the list of intermediate sanctions, and imposed a prison sentence on the basis of facts contained in the presentence investigation report (PSIR). Contrary to Justice Kelly’s contention that “Harper had no opportunity to present contrary evidence, ” post at 669, the judge permitted Harper and his attorney to review the PSIR and to challenge the accuracy of its contents, as required by MCL 771.14(5) and (6). The judge also specifically explained to Harper the importance of noting inaccuracies, saying: “Now, sometimes they make mistakes on those reports and if they do it’s important that you catch them, Mr. Harper, because we keep these reports for years and if there is a mistake now it could be used against you next year____” Harper stated that he had read the PSIR. When asked if he saw any mistakes, he pointed out that a prior felony conviction had not been included, previously, when his attorney estimated his PRV score. He agreed that he understood that the felony was properly added, however, and stated: “I’m not contesting anything____” Defense counsel also specifically indicated that “we ha[ve] reviewed this report, I have no additions, corrections or deletions to the report.”[72]
*643 Now, on appeal, Harper makes no claim that his record — of parole revocations, absconding from parole, bench warrants for failures to appear, and run-ins with law enforcement in other states — is inaccurate. During his oral argument before this Court, he mounted a slight challenge to the sentencing judge’s conclusion that he had “ripped off a charity that was trying to do good for cold children.” He claimed that “[n]othing at the plea talked about stealing coats from children,” adding that, although Old News Boys is a “charity that served needy people ..., there’s lots of different needy people adult and children ... .” On this point, we simply note that, at the sentencing hearing, the president of Old News Boys explained that the organization served “needy children and families who are less fortunate.”
Therefore, we conclude beyond a reasonable doubt that the facts used by the sentencing judge to support Harper’s sentence were “uncontested and supported by overwhelming evidence,” such that a jury would have reached the same result.[73] Indeed, like the defendant in Neder, Harper does not suggest that he would offer contrary evidence, particularly concerning the facts contained in his court records, if given the opportunity to do so.[74] Accordingly, if the judge is found to have violated Blakely at sentencing, any error is harmless beyond a reasonable doubt and does not require reversal.
*644 2. BURNS
Similarly, in Bums, we conclude that if any Blakely error is found to have occurred, it would be harmless beyond a reasonable doubt.[75] At sentencing on the probation violation, the judge relied on evidence presented at the probation violation hearing to conclude that substantial and compelling reasons existed to depart from the original guidelines sentence. At the hearing, defense counsel did not contest that his client had touched the young woman’s buttocks, nor did he contest that his client had used alcohol in violation of his probation order. Burns himself admitted to the officer that the sexual touching had occurred and that he had consumed six beers. The defense presented no evidence and called no witnesses to contest these facts, despite having an opportunity to do so. We thus conclude beyond a reasonable doubt that the facts used by the sentencing judge to support Burns’s sentence were “uncontested and supported by overwhelming evidence,” such that a jury would have reached the same result.[76]
IV CONCLUSION
For these reasons, we reaffirm our holding in Drohan that Michigan has a true indeterminate sentencing system in which the statutory maximum is prescribed by law and in which the sentencing guidelines are used only to determine a defendant’s minimum sentence. An intermediate sanction does not constitute a maximum sentence under Blakely, it bears no relation to the *645 maximum sentence authorized by the jury verdict or the guilty plea. Rather, it establishes a statutory right to a cap on the defendant’s period of incarceration, conditioned on the absence of substantial and compelling reasons to depart upward. Significantly, accepting defendants’ arguments in these cases would require us to conclude that Blakely guarantees them a right to sentences that are less than those authorized by a jury verdict or guilty plea; to the contrary, Blakely prohibits a sentencing judge from exceeding the sentence authorized by the verdict or plea. Agreeing with defendants would also deprive intermediate sanctions such as probation of much of their intended effect. Finally, if any Blakely error is found to exist in either of these cases, we are convinced that any such errors were harmless beyond a reasonable doubt, given that the facts used by the sentencing judges were uncontested and supported by overwhelming evidence, such that a jury would have reached the same result. Accordingly, we affirm the defendants’ convictions and sentences.
Taylor, C.J., and Weaver, Young, and Markman, JJ., concurred with CORRIGAN, J.

 Accordingly, we reject the Court of Appeals contrary conclusion in People v Uphaus, 275 Mich App 158; 737 NW2d 519 (2007).

 As Justice Kennedy noted in Harris v United States, 536 US 545, 566; 122 S Ct 2406; 153 L Ed 2d 524 (2002), “[t]he Fifth and Sixth Amendments ensure that the defendant ‘will never get more punishment than he bargained for when he did the crime,’ but they do not promise that he will receive ‘anything less’ than that.” (Emphasis added; citation omitted.) See also Apprendi v New Jersey, 530 US 466, 498-499; 120 S Ct 2348; 147 L Ed 2d 435 (2000) (Scalia, J., concurring), indicating that the Sixth Amendment provides “the right to have a jury determine those facts that determine the maximum sentence the law allows,” and that a defendant receiving a lesser sentence “may thank the mercy of a tenderhearted judge (just as he may thank the mercy of a tenderhearted parole commission if he is let out inordinately early, or the mercy of a tenderhearted governor if his sentence is commuted).”

 MCL 750.360; MCL 750.503; MCL 777.16r.

 MCL 750.174(4)(a).

 As a fourth-offense habitual offender, Harper’s potential maximum prison sentence for larceny in a building would have increased from 4 years to 15 years under MCL 769.12(l)(b).

 MCL 777.51; MCL 777.52; MCL 777.55.

 MCL 777.46(l)(c).

 MCL 777.68.

 MCL 769.34(4)(a); MCL 769.31(b).

 477 Mich 933 (2006).

 Contrary to the apparent assumptions of Justice Kelly, post at 648-650, and Justice Cavanagh, post at 646, the sentencing judge followed the proper procedure for stating his reasons for departure. A judge is required to “stateU on the record a substantial and compelling reason to sentence the individual to the jurisdiction of the department of corrections.” MCL 769.34(4)(a) (emphasis added); see also MCR 6.425(E)(1)(e). The judge did precisely this.

 Apprendi, supra at 476, 490.

 Id. at 476.

 Blakely, supra at 303; Apprendi, supra at 490.

 See People v Drohan, 475 Mich 140, 159-160; 715 NW2d 778 (2006), citing Claypool, supra at 730 n 14.

 Blakely, supra at 299, citing Wash Rev Code 9.94A.320.

 Blakely, supra at 299, citing Wash Rev Code 9.94A.120(2).

 Blakely, supra at 299, citing Wash Rev Code 9.94A.120(3).

 Blakely, supra at 300.

 Id. at 304-305.

 MCL 769.8(1); Drohan, supra at 160. Michigan’s habitual-offender statutes are an exception to the Legislature’s requirement that the maximum portion of a defendant’s indeterminate sentence be the maximum penalty provided by law. The habitual-offender statutes grant a sentencing judge the discretion to increase the maximum portion of a recidivist’s indeterminate sentence beyond the statutory limit on the basis of the fact of a prior conviction, as permitted by Apprendi and Blakely. Id. at 161 n 13; MCL 769.10(l)(a) (upon a second felony conviction, a judge may impose a maximum sentence of up to IV2 times the statutory maximum prescribed for a first conviction of the offense); MCL 769.11(l)(a) (upon a third felony conviction, a judge may impose a maximum sentence of up to twice the statutory maximum); MCL 769.12(l)(a) and (b) (upon a fourth or subsequent felony conviction, a judge may impose a maximum sentence of up to 15 years for offenses carrying statutory maximum terms of less than 5 years and a sentence of life in prison for offenses carrying maximum terms of 5 years or more). When a judge imposes an increased maximum sentence under these statutes, the defendant’s sentence remains an indeterminate sentence. Moreover, the judge is expressly prohibited from sentencing a recidivist to a maximum sentence that is less than the maximum term for a first conviction. MCL 769.10(2); MCL 769.11(2); MCL 769.12(2).
A very limited number of offenses carry determinate sentences in Michigan, such as first-degree murder, MCL 750.316 (life in prison without the possibility of parole), and carrying or possessing a firearm when committing or attempting to commit a felony, MCL 750.227b (two *613 years in prison for a first offense, five years for a second offense, and ten years for a third or subsequent offense).

 MCL 769.34(3).

 MCL 791.234; MCL 791.235; Drohan, supra at 163.

 The United States Supreme Court has firmly established that, when a legislature defines the outer limit of an indeterminate sentence on the basis of the elements of an offense, judicial fact-finding may be employed to set the minimum sentence. McMillan v Pennsylvania, 477 US 79, 86-88, 93; 106 S Ct 2411; 91 L Ed 2d 67 (1986); see also Harris, supra at 567 (opinion of Kennedy, J.) (“Read together, McMillan and Apprendi mean that those facts setting the outer limits of a sentence, and of the judicial power to impose it, are the elements of the crime for the purposes of the constitutional analysis. Within the range authorized by the jury’s verdict, however, the political system may channel judicial discretion— and rely upon judicial expertise — by requiring defendants to serve minimum terms after judges make certain factual findings.”).

 The fact that a defendant is always liable to serve the statutory maximum sentence in Michigan also distinguishes our scheme from the schemes Justice Kelly claims are indistinguishable. She compares, for instance, Ring v Arizona, 536 US 584, 592-593; 122 S Ct 2428; 153 L Ed 2d 556 (2002), in which the United States Supreme Court rejected an Arizona sentencing law allowing the sentencing judge to determine, at a separate posttrial hearing, whether the defendant would be subject to a maximum sentence of either death or life imprisonment. Post at 665-666. The state argued that the jury verdict authorized either sentence. The Ring Court disagreed, given that the maximum sentence of death could only be imposed if the judge found aggravating circumstances. Ring, supra at 603-604. An Arizona offender also could not know until sentencing was complete whether he would be subject to the death penally for his crime. In contrast, and contrary to Justice Kelly’s contention, Michigan’s indeterminate sentences do “have only one maximum sentence,” post at 659, and the statutes unambiguously notify Michigan offenders of the statutory maximum terms applicable to their crimes.
In her dissent in People v McCuller, 479 Mich 672; 739 NW2d 563 (2007), Justice Kelly also compares the federal sentencing system as it existed before the United States Supreme Court’s decision in United States v Booker, 543 US 220; 125 S Ct 738; 160 L Ed 2d 621 (2005). But the federal sentencing guidelines did not merely set a minimum sentence and leave a defendant liable to serve the statutory maximum, as in Michigan. Rather, in Booker, as Justice Kelly concedes, although a separate federal statute set an absolute maximum sentence of life in prison for the defendant’s offense, in Booker’s particular case “the guidelines required a maximum sentence of 21 years and 10 months’ imprisonment.” McCuller, supra at 714 (Kelly, J., dissenting) (emphasis added); see Booker, supra at 227. Accordingly, the judge’s upward departure from that range on the basis of his own findings was impermissible given the then-mandatory nature of the guidelines, although the 30-year sentence imposed was within the outer limit of the absolute maximum. Booker, supra at 226-227. As we will more fully explain later in this opinion, Michigan’s sentencing guidelines establish a defendant’s minimum sentence. Our statutory máximums for a given offense are static.

 MCL 777.21(1). The range for the minimum sentence may also be increased on the basis of a defendant’s status as an habitual offender. MCL 777.21(3).

 MCL 769.34(2)(a).

 MCL 769.34(3).

 People v Babcock, 469 Mich 247, 258; 666 NW2d 231 (2003) (internal quotations and citation omitted).

 MCL 769.34(3)(a).

 MCL 769.34(2)(b). MCL 769.34 does not apply when a defendant is convicted of an offense punishable by a prison sentence of “life or any term of years” because the minimum will never exceed 2/s of the statutory maximum sentence of life authorized by the jury verdict. Drohan, supra at 162 n 14.

 People v Stauffer, 465 Mich 633, 636 n 8; 640 NW2d 869 (2002).

 MCL 769.34(4)(c).

 The nonexhaustive list of intermediate sanction options includes:
(i) Inpatient or outpatient drug treatment or participation in a drug treatment court under chapter 10A of the revised judicature act of 1961, 1961 PA 236, MCL 600.1060 to 600.1082.
(ii) Probation with any probation conditions required or authorized by law.
(iii) Residential probation.
(in) Probation with jail.
(u) Probation with special alternative incarceration.
(ui) Mental health treatment.
(vii) Mental health or substance abuse counseling.
(uiii) Jail.
(ix) Jail with work or school release.
(x) Jail, with or without authorization for day parole under 1962 PA 60, MCL 801.251 to 801.258.
(xi) Participation in a community corrections program.
(xii) Community service.
*619 (xiii) Payment of a fine.
(xiv) House arrest.
(xv) Electronic monitoring. [MCL 769.31(b).]

 Cunningham, supra, 127 S Ct at 861-862.

 Id., 127 S Ct at 860.

 Id., 127 S Ct at 861, citing Cal Penal Code 288.5(a) (stating that a person convicted of continuous sexual abuse of a child “shall be punished by imprisonment in the state prison for a term of 6, 12, or 16 years”).

 Cunningham, supra, 127 S Ct at 861, quoting Cal Penal Code 1170(b) (emphasis added).

 Cunningham,, supra, 127 S Ct at 861-862, quoting Cal Penal Code 1170(b).

 Cunningham, supra, 127 S Ct at 860.

 People v Buehler, 477 Mich 18, 26-27; 727 NW2d 127 (2007).

 Id.

 See also Sears v Cottrell, 5 Mich 251, 259 (1858):
No rule of construction is better settled in this country, both upon principle and authority, than that the acts of a state legislature are to be presumed constitutional until the contrary is shown; and it is only when they manifestly infringe some provision of the constitution that they can be declared void for that reason. In cases of doubt, every possible presumption, not clearly inconsistent with the language and the subject matter, is to be made in favor of the constitutionality of the act.

 Blakely, supra at 303 (emphasis in original).

 As we have explained, the habitual-offender statutes provide a slight exception to this rule by permitting a sentencing judge to increase a maximum sentence on the basis of the fact of prior conviction. See n 21 of this opinion; see also Drohan, supra at 161 n 13.

 1927 PA 175. The language originally read “except as hereinafter provided” and “except as herein provided.” It was modified to its current form by 1978 PA 77.

 1994 PA 445; MCL 769.34(2), as amended by 1998 PA 317.

 See MCL 769.31(b)(t), (¿¿), and (iv), concerning drug treatment, probation with any conditions required or authorized by law, and probation with jail, respectively.

 1927 PA 175.

 MCL 771.1(1) provides in full:
In all prosecutions for felonies, misdemeanors, or ordinance violations other than murder, treason, criminal sexual conduct in the first or third degree, armed robbery, or major controlled substance offenses, if the defendant has been found guilty upon verdict or plea and the court determines that the defendant is not likely again to engage in an offensive or criminal course of conduct and that the public good does not require that the defendant suffer the penalty imposed by law, the court may place the defendant on probation under the charge and supervision of a probation officer.

 Justice Kelly contends that differences between Michigan’s sentencing scheme and the federal sentencing scheme preclude any comparison in this context. She observes that, under the federal scheme, a judge need not adhere to the originally established guidelines range when resentencing a defendant after he violates the conditions of probation. Post at 659-660, citing United States v Goffi, 446 F3d 319, 322 (CA 2, 2006). *629 Rather, upon resentencing, a federal judge consults relevant guidelines or policy statements issued by the United States Sentencing Commission. Id.; 18 USC 3553(a)(4)(B). The judge is free to exceed the initial guidelines range as long as the sentence is still within the absolute statutory maximum for the underlying conviction. Goffi, supra at 322-323. For comparison, in Michigan the sentencing guidelines continue to apply in this context and, as usual, a judge must sentence the defendant within the guidelines or state substantial and compelling reasons for departure. People v Hendrick, 472 Mich 555, 560, 562-563; 697 NW2d 511 (2005). Moreover, “it is perfectly acceptable to consider postprobation factors in determining whether substantial and compelling reasons exist to warrant an upward departure.” Id. at 562-563.
We fail to see how the differences between the two schemes “completely undermineD [our] argument.” Post at 660-661. The federal system affords a judge general discretion to exceed the original guidelines range when sentencing a defendant who has violated probation as long as the judge consults relevant guidelines or policy statements. The Michigan system affords such discretion as long as the judge gives legally sufficient substantial and compelling reasons for departure. In both systems, the statutory maximum authorized by jury verdict or the defendant’s guilty plea has not changed and may not be exceeded. Neither system grants a defendant a special right to a sentence limited to the initial guidelines range merely because he was initially afforded probation and chose to violate the probationary conditions.

 The 12-month limit placed on jail time by MCL 771.3(2)(a) has been effective since 1981, when it was increased from six months by 1980 PA 514.

 Justice Kelly contrasts a situation in which a defendant is sentenced only to 12 months or less of jail time without a period of probation. Post at 660 n 12. A judge may simply sentence a defendant to jail with no further monitoring or evaluation. But the statute also empowers the judge to impose both jail and probation. It is this latter option that Justice Kelly’s analysis would render impossible to exercise.

 People v Sturdivant, 412 Mich 92; 312 NW2d 622 (1981), mod People v Whiteside, 437 Mich 188 (1991); see also North Carolina v Pearce, 395 US 711; 89 S Ct 2072; 23 L Ed 2d 656 (1969), overruled in part on other grounds by Alabama v Smith, 490 US 794 (1989).

 Justice Kelly essentially treats the 12-month jail term as the only meaningful measure of an intermediate sanction, saying that the term “defines the upper limit of an intermediate sanction cell sentence!.]” Post at 658. But because intermediate sanctions can include a jail term added to other sanctions, any characterization of the “upper limit” of an intermediate sanction must take into account the nature and effect of additional sanctions such as probation.

 Moreover, we disagree with Justice Kelly that, “[e]ven if the Legislature intended [that probation violators be punished with more than 12 months in jail], it is irrelevant.” Post at 663. As we have explained, the Legislature has successfully conveyed its intent — and therefore has also put potential offenders on notice — that no defendant is guaranteed a sentence of only 12 months’ jail time merely because his minimum sentence range under the guidelines falls into an intermediate sanction cell. Thus, even under Justice Kelly’s theory that the legislative scheme appears to improperly shift sentencing discretion to judges under limited circumstances, the Legislature’s clear intent in this area would require a result like the one employed in Booker. There the United States Supreme Court rendered the offending portions of the federal sentencing guidelines advisory in order to best effectuate Congress’s intent in enacting them. Booker, supra at 245, 265.

 See MCL 777.16r.

 The record in Burns does not contain a transcript of the plea hearing, but Burns does not contend that the trial judge failed to advise him of the five-year maximum prison sentence for attempted breaking and entering, as the judge was required to do under MCR 6.302(B)(2).

 Cunningham, supra, 127 S Ct at 861-862.

 Id., 127 S Ct at 868.

 Blakely, supra at 309.

 Id.

 id.

 Neder, supra at 4.

 Id.

 Id. at 15-16.

 Id. at 16.

 Recuenco, supra, 126 S Ct at 2552-2553.

 Id., 126 S Ct at 2550.

 Id., 126 S Ct at 2553. Justice Kelly’s position would ultimately render Blakely errors in Michigan harmful per se because Michigan “has no process for criminal juries to make special findings of fact.” She states that “the procedural discussion in Recuenco suggests that the prosecution could not carry its burden in this case to prove the Blakely error harmless beyond a reasonable doubt.” Post at 667-668. When the defendant posed this argument in Recuenco, the United States Supreme Court did not need to resolve the question. Rather, the question before the Court was “whether Blakely error can ever be deemed harmless.” Recuenco, supra, 126 S Ct at 2550-2551. Contrary to Justice Kelly’s contention, it was unclear whether Washington “state law specifically allowed juries to make findings of fact.” Post at 668. The high court left this question to the Washington courts on remand. Recuenco, supra, 126 *641 S Ct at 2550-2551. In any event, the Recuenco Court questioned the defendant’s interpretation of Washington law, observing that the Washington Court of Appeals had allowed juries to issue special verdicts on aggravating factors and the Washington Supreme Court had explicitly chosen not to establish a contrary rule in a case that did not squarely present the question. Id.., 126 S Ct at 2550.
Similarly, Michigan law is not perfectly clear on this point. Justice Kelly points to two nineteenth eentuiy cases in which this Court refused to allow the use of special questions in criminal cases because such questions “limit[] • • • the right of the jury to find a general verdict,” People v Roat, 117 Mich 578, 583; 76 NW 91 (1898), and because the then-governing statutes did not clearly permit it, People v Marion, 29 Mich 31, 40-41 (1874). We note that, more recently, Justice Levin observed, in his dissent in People v Ramsey, 422 Mich 500, 536; 375 NW2d 297 (1985), that many jurisdictions have concluded that not all use of special verdicts is error per se because specific findings of fact may be necessary to determine the nature of the conviction or the sentence. Indeed, the Michigan Court of Appeals has implicitly condoned the use of special verdict forms enabling a jury to find a particular fact under some circumstances. See People v Matuszak, 263 Mich App 42, 51; 687 NW2d 342 (2004); People v Kiczenski, 118 Mich App 341, 345; 324 NW2d 614 (1982).
Most significantly, the Recuenco Court did not reach the question whether the unavailability of a particular procedure in the trial court necessarily renders all errors harmful, in essence transforming Blakely errors into structural errors for all defendants in a given state. As Justice Kelly ultimately concedes, at most Recuenco “advises [that] the lack of a procedure for special findings will increase the difficulty of the prosecution’s burden to prove any error harmless beyond a reasonable doubt.” Post at 668 n 18. Moreover, any conclusion on our part — based on dicta in Recuenco — that the lack of a procedure is alone dispositive would run counter to the crux of the harmless error analysis that forms the basis of the Recuenco Court’s holding. The central question remains whether the facts used by a sentencing judge to support a sentence were “uncontested and supported by overwhelming evidence,” such that a jury would have reached the same result. Neder, supra at 17. To illustrate, as we will explain further in parts 111(C)(1) and (2) of this opinion, neither defendant in the cases before us seriously contends that a jury would have returned findings different from those of the sentencing judge, given the overwhelming evidence presented at each proceeding. Thus, even if the sentencing judges erred under Blakely, the errors in these cases would be precisely the sort of technical errors that do not require reversal under a harmless error analysis because they do not affect the substance or outcome of the proceedings.

 Chapman v California, 386 US 18; 87 S Ct 824; 17 L Ed 2d 705 (1967); People v Shepherd, 472 Mich 343; 697 NW2d 144 (2005).

 We also note, first, that Michigan courts have long held that a sentencing court may presume that unchallenged facts contained in a PSIR are accurate. People v Grant, 455 Mich 221, 233-234; 565 NW2d 389 (1997). Second, we do not need to reach the question whether Harper effectively admitted the facts contained in the PSIR or waived his rights *643 under Blakely, as is expressly permitted by the Blakely Court when a defendant pleads guilty. Blakely, supra at 310. In light of Harper’s express agreement that no corrections to the PSIR were necessary, however, we note that, under many circumstances, a defendant waives a right — and, for purposes of review, extinguishes rather than merely forfeits error — when the defendant affirmatively agrees to a course of action in the trial court. People v Carter, 462 Mich 206, 215; 612 NW2d 144 (2000).

 Neder, supra at 17.

 Id. at 15-16.

 As in Harper, the defendant in Bums preserved the Blakely issue by raising it in a motion for resentencing. Thus, we review whether the alleged error is harmless beyond a reasonable doubt.

 Neder, supra at 17.