# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Corbin R. Davis

## PEOPLE v MAZUR

Docket No. 149290.  Argued January 15, 2015.  Decided June 11, 2015.

Cynthia A. Mazur was charged in the Oakland Circuit Court, Colleen A. O'Brien, J., with possession with intent to deliver less than 5 kilograms or fewer than 20 plants of marijuana, MCL 333.7401(2)(d)(*iii*), and with manufacturing less than 5 kilograms or fewer than 20 plants of marijuana, *id*.  Defendant moved to dismiss the charges under the immunity provision of the Michigan Medical Marihuana Act (MMMA), MCL 333.26424.  The court denied the motion.  Defendant sought leave to appeal in the Court of Appeals, which granted the application.  In an unpublished opinion per curiam, issued April 1, 2014 (Docket No. 317447), the Court of Appeals, METER, P.J., and JANSEN and WILDER, JJ., affirmed.  Defendant sought leave to appeal in the Michigan Supreme Court.  The Supreme Court ordered and heard oral argument on whether to grant defendant's application for leave to appeal or take other action.  497 Mich 883 (2014).

In an opinion by Justice BERNSTEIN, joined by Justices KELLY, MCCORMACK, and VIVIANO, the Supreme Court *held*:

Because the conduct at issue in this case occurred before the enactment of 2012 PA 512 and 2012 PA 514, the Supreme Court considered the MMMA as originally enacted.  A defendant claiming that he or she was solely in the presence or vicinity of the medical use of marijuana was not entitled to immunity under MCL 333.26424(i) when the medical use of marijuana was not in accordance with the MMMA.  Nor was a defendant entitled to immunity under MCL 333.26424(i) when the defendant's conduct went beyond assisting with the use or administration of marijuana.  However, the Court of Appeals erred in interpreting the phrase "marihuana paraphernalia" as used in MCL 333.26424(g).  "Marihuana paraphernalia" as used in MCL 333.26424(g) included items that were both specifically designed or actually employed for the medical use of marijuana.  "Medical use" was broadly defined in the MMMA to include cultivation.  In this case, defendant provided her husband, who was both a qualifying patient and a registered caregiver under the MMMA, with sticky notes for the purpose of detailing the harvest dates of his plants.  This activity constituted the provision of marijuana paraphernalia for the medical use of marijuana under MCL 333.26424(g) because the sticky notes were actually used in the cultivation of marijuana.  Accordingly, the prosecution was prohibited from relying on the evidence of defendant's provision of the sticky notes in bringing charges against defendant.

1.  Under the MMMA, immunity was available to people who were neither registered qualifying patients nor primary caregivers under MCL 333.26424(i) and (g).  A person could claim immunity under MCL 333.26424(i) either (1) for being in the presence or vicinity of the medical use of marijuana in accordance with the MMMA, or (2) for assisting a registered qualifying patient with using or administering marijuana.  In this case, the evidence showed that the marijuana operation was not in accordance with the MMMA and that defendant assisted her husband with the cultivation of marijuana, not the ingestion of marijuana.  Therefore, defendant was not entitled to lay claim to immunity under either provision of MCL 333.26424(i).

2.  Under MCL 333.26424(g), an individual could claim immunity for providing a registered qualifying patient or a registered primary caregiver with marijuana paraphernalia for purposes of a qualifying patient's medical use of marijuana.  In MCL 333.7451, the Public Health Code defines drug paraphernalia as any equipment, product, material, or combination of equipment, products, or materials, that is specifically designed for use in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance.  The Court of Appeals erred when it concluded that the MMMA and the Offenses and Penalties provisions of Article 7 of the Public Health Code, in which the definition of "drug paraphernalia" is found, were *in pari materia*.  The MMMA's purpose is to allow medical marijuana use for certain individuals under limited circumstances, whereas the purpose of the Offenses and Penalties provisions is to criminalize marijuana use and related activities.  The aim of each statute is distinct; in fact, they are contrary to one another.  And the Legislature specifically limited application of the statutory definition of "drug paraphernalia" to certain provisions of the Public Health Code.  As commonly understood, "paraphernalia" means equipment, apparatus, or furnishings used in or necessary for a particular activity.  A specific design need not be intended.  In context, as used in § 4(g), the phrase "marihuana paraphernalia for purposes of a qualifying patient's medical use of marihuana" meant that an item may or may not have been marijuana paraphernalia depending on the use to which it was put.  Under the MMMA, "medical use" referred to activities beyond just administration or ingestion, including transportation, internal possession, and cultivation.  In this case, defendant provided her husband, who was both a qualifying patient and a registered caregiver under the MMMA, with sticky notes for the purpose of detailing the harvest dates of his plants.  This activity constituted the provision of marijuana paraphernalia for the medical use of marijuana under MCL 333.26424(g), because the sticky notes were actually used in the cultivation of marijuana.  Accordingly, the prosecution was prohibited from relying on the evidence of defendant's provision of the sticky notes in bringing charges against defendant.  If that evidence was the only basis for the criminal charges, the charges had to be dismissed.  But if there was other evidence supporting the charges, the prosecution could proceed on the basis of the remaining evidence.

Reversed; case remanded to the circuit court for further proceedings.

Justice MARKMAN, concurring in part and dissenting in part, would have affirmed the judgment of the Court of Appeals.  Justice MARKMAN agreed with the majority to the extent it held that a defendant claiming that he or she was solely in the presence or vicinity of the medical

use of marijuana was not entitled to immunity under § 4(i) when the medical use of marijuana was not in accordance with the act and that a defendant was not entitled to immunity under § 4(i) when the defendant's conduct went beyond assisting with the use or administration of marijuana, and that, therefore, defendant was not entitled to immunity under § 4(i).  Justice MARKMAN disagreed, however, with the majority to the extent that it held that "marihuana paraphernalia" as used in § 4(g) included items either specifically designed or actually employed for the medical use of marijuana.  The MMMA and Article 7 of the Public Health Code are *in pari materia* because they share the same general purpose—the regulation of controlled substances, including, specifically, marijuana.  Using the definition from the Public Health Code, "marijuana paraphernalia" meant any equipment, product, material, or combination of equipment, products, or materials, that was specifically designed for use in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing marijuana into the human body.  Because the sticky notes were not specifically designed for any such use, they were not marijuana paraphernalia and defendant was not entitled to immunity under § 4(g).

Justice ZAHRA, joined by Chief Justice YOUNG, concurring in part and dissenting in part, would have affirmed the judgment of the Court of Appeals, agreeing with the majority that defendant was not entitled to immunity under § 4(i) of the MMMA, but disagreeing with the majority that "marihuana paraphernalia" under § 4(g) included any items employed for the medical use of marijuana.  A plain reading of MCL 333.26424(g) revealed that a person claiming immunity must have provided (1) marijuana paraphernalia (2) to a registered qualifying patient or a registered primary caregiver (3) for purposes of a qualifying patient's medical use of marijuana.  The third element did not explain the meaning of "marihuana paraphernalia." Rather, the third element defined the specific intent of the person claiming immunity for providing marijuana paraphernalia.  Reading the MMMA as a whole, "marihuana paraphernalia" must have been an item or items intended to assist in the administration of marijuana to a qualifying patient under the MMMA.  Because the sticky notes at issue in this case were not used for the administration of marijuana to a qualifying patient, defendant's act of assisting her husband with the cultivation of marijuana through the use of sticky notes was not immune under MCL 333.26424(g).

©2015 State of Michigan

# OPINION

Chief Justice:      Justices:

Robert P. Young, Jr.   Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein

FILED June 11, 2015

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v                                                    No. 149290

CYNTHIA ANN MAZUR,

Defendant-Appellant.

BEFORE THE ENTIRE BENCH

BERNSTEIN, J.

This case requires us to examine immunity under the Michigan Medical Marihuana Act (MMMA), MCL 333.26421 *et seq.* We are specifically concerned with the application of the MMMA's immunity provisions to individuals who are neither registered qualifying patients nor primary caregivers. See MCL 333.26424(g); MCL 333.26424(i).

We hold that a defendant claiming that he or she is solely in the presence or vicinity of the medical use of marijuana is not entitled to immunity under

MCL 333.26424(i) when the medical use of marijuana was not in accordance with the act. Nor is a defendant entitled to immunity under MCL 333.26424(i) when the defendant's conduct goes beyond assisting with the use or administration of marijuana. However, we hold that "marihuana paraphernalia," as that phrase is used in MCL 333.26424(g), includes items that are both specifically designed or actually employed for the medical use of marijuana. Accordingly, we reverse the judgment of the Court of Appeals and remand this case to the circuit court for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

Defendant Cynthia Mazur is the wife of David Mazur, who was himself both a registered qualifying patient and a registered primary caregiver for two medical marijuana patients. David Mazur grew marijuana in their marital home. Officers of the Holly Police Department, acting on a tip, searched the residence for marijuana. Marijuana plants, dried marijuana, and pipes with marijuana residue were found. In executing the search, an officer questioned defendant, who used the first-person plural pronoun "we" when describing the marijuana operation. Although the use of this pronoun led the officers to conclude that defendant was a participant in her husband's marijuana operation, defendant maintains that her involvement was limited to writing the date of harvest for marijuana plants on several sticky notes.

The Oakland County Prosecutor charged both defendant and David with marijuana-related offenses. In a separate proceeding, David pleaded guilty to one count of possession with intent to deliver less than five kilograms or fewer than 20 plants of

2

marijuana, MCL 333.7401(2)(d)(*iii*), and one count of manufacturing less than five kilograms or fewer than 20 plants of marijuana, *id*. Defendant was charged with the same two offenses. Defendant moved to dismiss the charges against her citing the immunity provision of the MMMA, MCL 333.26424. The circuit court held that MCL 333.26424(g) did not apply because there was no evidence that defendant provided marijuana paraphernalia to either a registered qualifying patient or a caregiver; the circuit court also held that MCL 333.26424(i) did not apply because David's use of medical marijuana was not in compliance with the MMMA. The Court of Appeals affirmed. *People v Mazur*, unpublished opinion per curiam of the Court of Appeals, issued April 1, 2014 (Docket No. 317447).

Defendant then sought leave to appeal in this Court. We directed the Clerk of the Court to schedule oral argument on whether to grant the application or take other action, asking the parties to address:

> [W]hether the defendant is entitled to immunity under § 4 of the Michigan Medical Marihuana Act (MMMA), MCL 333.26421 *et seq.*, specifically MCL 333.26424(g) and/or MCL 333.26424(i), where [defendant's] spouse was a registered qualifying patient and primary caregiver under the act, but his marijuana-related activities inside the family home were not in full compliance with the act. [*People v Mazur*, 497 Mich 883 (2014).]

## II. STANDARD OF REVIEW

Questions of statutory interpretation are reviewed de novo. *Michigan v McQueen*, 493 Mich 135, 146-147; 828 NW2d 644 (2013). Statutes enacted by the Legislature are interpreted in accordance with legislative intent; similarly, statutes enacted by initiative petition are interpreted in accordance with the intent of the electors. *Id.* at 147. We begin with an examination of the statute's plain language, which provides "the most reliable

3

evidence" of the electors' intent. See *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999), quoting *United States v Turkette*, 452 US 576, 593; 101 S Ct 2524; 69 L Ed 2d 246 (1981).

This Court reviews a trial court's findings of fact for clear error. *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 172-173; 848 NW2d 95 (2014). A factual finding is clearly erroneous if it either lacks substantial evidence to sustain it, or if the reviewing court is left with the definite and firm conviction that the trial court made a mistake. *Id*.

### III. IMMUNITY UNDER THE MICHIGAN MEDICAL MARIHUANA ACT

The MMMA was enacted by voter referendum in 2008 and allows for the medical use of marijuana to treat or alleviate the pain associated with a debilitating medical condition. Although the Legislature has since amended the MMMA by enacting 2012 PA 512 and 2012 PA 514, the conduct at issue occurred before the date these amendments took effect. Therefore, we consider only the MMMA as originally enacted.

Section 4 of the MMMA concerns immunity. A qualifying patient who receives a registry identification card is entitled to immunity, provided that certain conditions are met. MCL 333.26424(a). A primary caregiver who receives a registry identification card is entitled to the same protection. MCL 333.26424(b). Both Subsections (a) and (b) state that this protection only applies to the "medical use of marihuana in accordance with this act." MCL 333.26424(a) and (b). "Medical use" is defined as:

> [T]he acquisition, possession, cultivation, manufacture, use, internal possession, delivery, transfer, or transportation of marihuana or paraphernalia relating to the administration of marihuana to treat or alleviate a registered qualifying patient's debilitating medical condition or symptoms associated with the debilitating medical condition. [MCL 333.26423(e), as enacted by 2008 IL 1.]

4

Two additional provisions of the MMMA provide immunity to people who are neither registered qualifying patients nor primary caregivers: MCL 333.26424(g) and MCL 333.26424(i). These are the two provisions under which defendant claims immunity.

Section 4(g) states:

> A person shall not be subject to arrest, prosecution, or penalty in any manner, or denied any right or privilege, including but not limited to civil penalty or disciplinary action by a business or occupational or professional licensing board or bureau, *for providing* a registered qualifying patient or a registered primary caregiver with *marihuana paraphernalia for purposes of* a qualifying patient's *medical use* of marihuana. [MCL 333.26424(g) (emphasis added).]

Section 4(i) states:

> A person shall not be subject to arrest, prosecution, or penalty in any manner, or denied any right or privilege, including but not limited to civil penalty or disciplinary action by a business or occupational or professional licensing board or bureau, *solely for being in the presence or vicinity of the medical use of marihuana in accordance with this act, or for assisting a registered qualifying patient with using or administering marihuana.* [MCL 333.26424(i) (emphasis added).]

## IV. APPLICATION

Defendant claims entitlement to the immunity defense under both §§ 4(g) and 4(i) of the MMMA. Because we agree with the Court of Appeals that defendant is not entitled to immunity under § 4(i), we begin our analysis with an examination of that section.

5

## A. MCL 333.26424(i)

Section 4(i) of the MMMA offers two distinct types of immunity, as evidenced by the use of the disjunctive "or." A person may claim immunity either: (1) "for being in the presence or vicinity of the medical use of marihuana in accordance with this act," or (2) "for assisting a registered qualifying patient with using or administering marihuana." MCL 333.26424(i). These clauses are also preceded and modified by the adverb "solely," which places a limitation on both claims of immunity.

We hold that defendant is not entitled to either type of immunity under § 4(i) of the MMMA. As to the first immunity provision in § 4(i), a person is only entitled to immunity when the underlying medical use of marijuana is in accordance with the MMMA. Although we decline to state whether defendant's husband's convictions should have been persuasive in deciding whether defendant was eligible for immunity, we agree with the Court of Appeals that the evidence showed that the marijuana operation was *not* in accordance with the MMMA.[1]

Defendant argues that she has no control over the acts of another autonomous being, and that if one is merely limited to being present, one is necessarily unable to intervene. But to read § 4(i) in the manner that defendant requests would render the phrase "in accordance with this act" superfluous, and "[t]his Court 'must give effect to every word, phrase, and clause and avoid an interpretation that would render any part of

---

[1] Additionally, we directed the parties to address whether defendant was entitled to immunity when "[defendant's husband's] marijuana-related activities inside the family home *were not* in full compliance with the act." *Mazur*, 497 Mich at 883 (emphasis added).

6

the statute surplusage or nugatory.' " *People v Cunningham*, 496 Mich 145, 154; 852 NW2d 118 (2014), quoting *State Farm Fire & Cas Co v Old Republic Ins Co*, 466 Mich 142, 146; 644 NW2d 715 (2002). We recognize the apparent inequity of holding one individual responsible for another's wrongdoing; however, the plain language of the statute does not allow for another reading.[2]

This Court has previously addressed the second claim of immunity in § 4(i):

> Notably, § 4(i) does not contain the statutory term "medical use," but instead contains two of the nine activities that encompass medical use: "using" and "administering" marijuana. . . . In this context, the terms "using" and "administering" are *limited to conduct involving the actual ingestion of marijuana*. Thus, by its plain language, § 4(i) permits, for example, the spouse of a registered qualifying patient to assist the patient in ingesting marijuana, regardless of the spouse's status. [*McQueen*, 493 Mich at 158 (emphasis added).]

"Medical use", as defined in former § 3(e),[3] is a term that encompasses nine different actions. Because the second type of immunity available under § 4(i) refers generically to "using and administering" marijuana and not to the statutorily defined "medical use" of marijuana, this Court read § 4(i) narrowly in *McQueen*. Because the defendants in *McQueen* were engaged in the transfer, delivery, and acquisition of marijuana—activities that are found under the umbrella of "medical use"—but were not engaged in the mere use and administration of marijuana, this Court found that they were not entitled to immunity under § 4(i). *Id.* Similarly, defendant here was not merely assisting her

---

[2] It bears noting that traditional criminal defenses, such as challenges to the sufficiency of the evidence, are still available to defendant.

[3] "Medical use" is now defined in MCL 333.26423(f).

husband with conduct involving the actual *ingestion* of marijuana; instead, she assisted him with the *cultivation* of marijuana. Because assisting in the cultivation of marijuana does not constitute assistance with "using" or "administering" marijuana, defendant cannot lay claim to immunity under this provision of the MMMA.

### B. MCL 333.26424(g)

Under § 4(g) of the MMMA, an individual may claim immunity "for providing a registered qualifying patient or a registered primary caregiver with marihuana paraphernalia for purposes of a qualifying patient's medical use of marihuana." MCL 333.26424(g). At issue here is the definition of the term "marihuana paraphernalia," which is not explicitly defined in the MMMA.

In parsing this term, the Court of Appeals adopted the definition of "drug paraphernalia" used in the Public Health Code, MCL 333.1101 *et seq*.:

> [A]ny equipment, product, material, or combination of equipment, products, or materials, *which is specifically designed for use* in planting; propagating; cultivating; growing; harvesting; manufacturing; compounding; converting; producing; processing; preparing; testing; analyzing; packaging; repackaging; storing; containing; concealing; injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance[.] [MCL 333.7451 (emphasis added).]

The Court of Appeals reasoned that it was appropriate to refer to this definition, given that the Public Health Code and the MMMA are *in pari materia*, because both "restrict the use of controlled substances." *Mazur*, unpub op at 3. In particular, the Court of Appeals focused on the phrase "specifically designed for use in," which modifies the list of activities that follows.

8

As an initial matter, we note that the Court of Appeals erred by relying on the doctrine of *in pari materia* to determine the meaning of "marihuana paraphernalia." Under the doctrine, statutes that relate to the same subject or that share a common purpose should, if possible, be read together to create a harmonious body of law. *People v Harper*, 479 Mich 599, 621; 739 NW2d 523 (2007). An act that incidentally refers to the same subject is not *in pari materia* if its scope and aim are distinct and unconnected. *Palmer v State Land Office Bd*, 304 Mich 628, 636; 8 NW2d 664 (1943). Here, the MMMA and the Offenses and Penalties provisions of the Controlled Substances article of the Public Health Code[4] have two diametrically opposed purposes. The MMMA's purpose is to allow medical marijuana use for certain individuals under limited circumstances, whereas the purpose of the Offenses and Penalties provisions is to *criminalize* marijuana use and related activities. See MCL 333.7401. The Court of Appeals was wrong to state that these two provisions "relate to the same subject, i.e., *restrict the use* of controlled substances[.]" The aim of each statute is distinct, and indeed they are contrary to one another.

Furthermore, MCL 333.7451 begins with an important qualifier: "*As used in sections 7453 to 7461 and section 7521*, 'drug paraphernalia' means . . . ." By specifically limiting the applicability of this definition to certain statutory provisions, the Legislature expressed a clear intent that the definition should not be applied elsewhere. Application of the *in pari materia* doctrine would, therefore, be contrary to legislative

---

[4] Article 7 of the Public Health Code, MCL 333.7101 *et seq.*, concerns controlled substances. Part 74 of Article 7, MCL 333.7401 *et seq.*, concerns controlled-substance offenses and penalties.

intent. This Court held similarly in *Woodard v Custer*, 476 Mich 545; 719 NW 2d 842 (2006), which addressed the meaning of the phrase "board certified" in MCL 600.2169. The Legislature did not specifically define "board certified" in MCL 600.2169. Plaintiffs argued that the Court should read MCL 600.2169 *in pari materia* with the Public Health Code's definition, MCL 333.2701(a). This Court disagreed given that "the Legislature specifically limited the use of the Public Health Code's definition of 'board certified' to the Public Health Code . . . ." *Woodard*, 476 Mich at 563.[5] Because the Legislature specifically limited the use of the Public Health Code's definition of "drug paraphernalia" to certain provisions of the Public Health Code, it would be antithetical to the interpretive enterprise to apply the definition of "drug paraphernalia" beyond the scope prescribed.

Because we decline to rely on the definition of "drug paraphernalia" set forth in the Public Health Code to inform our understanding of the phrase "marihuana paraphernalia" as used in the MMMA, we turn instead to other conventional means of statutory interpretation. Generally, when a word used in a statute is not specifically defined, it bears "its common and approved usage of the language." MCL 8.3a.

---

[5] A separate concurrence agreed with the majority on this point:

> We decline to impute the definition of "board certified" from MCL 333.2701(a) to MCL 600.2169 for several reasons. First, the Legislature made clear that the definition of "board certified" set forth in MCL 333.2701(a) applies only to the Public Health Code by prefacing it with the statement "*As used in this part* [of the Public Health Code] . . . 'Board certified' means . . . ." (Emphasis added.) Especially in light of such clear words of limitation, we must presume that the Legislature intended that the definition of "board certified" set forth in MCL 333.2701(a) would not be applied to other statutes using the same phrase. [*Woodard*, 476 Mich at 610-611 (TAYLOR, C.J., concurring) (alteration in original)].

10

Accordingly, in order to decipher what the electors meant by "marihuana paraphernalia," we turn to the dictionary. "Marihuana" is quite well understood in this context. "Paraphernalia" is defined as "equipment, apparatus, or furnishings used in or necessary for a particular activity." *Random House Webster's College Dictionary* (2005). Nothing in this definition states that a specific design must be intended.

Because "[t]he law is not properly read as a whole when its words and provisions are isolated and given meanings that are independent of the rest of its provisions," *Lansing Mayor v Pub Serv Comm*, 470 Mich 154, 168; 680 NW2d 840 (2004), we must also read the phrase "marihuana paraphernalia" in light of the rest of § 4(g). In particular, "marihuana paraphernalia" must be read in light of the adjacent phrase "medical use of marihuana."[6] Read as a whole, the statute states that "marihuana paraphernalia" is employed for the "medical use" of marijuana. As previously noted, "medical use" is defined by statute, and includes several activities. When modified by the expansive definition of "medical use," it becomes clear that "marihuana paraphernalia" cannot be so limited as to only include those items that are specifically designed for the medical use of marijuana.

First, the phrase "for purposes of a qualifying patient's medical use of marihuana" indicates that an item may or may not be "marihuana paraphernalia," depending on the use to which it is put. Second, "medical use" is a broader term than mere use or

---

[6] "The statutory language must be read and understood in its grammatical context, unless it is clear that something different was intended." *Sun Valley Foods Co v Ward*, 460 Mich 230, 237; 596 NW2d 119 (1999). Nothing in the statute indicates that the words of this sentence are not meant to be read together as a single, grammatically linked unit.

11

administration. As discussed in *McQueen*, the drafters could easily have chosen the narrower language we see in § 4(i), but they did not. "Medical use" refers to activities as broad as transportation, internal possession, and cultivation. To only include items that were *specifically designed* for the medical use of marijuana would be to turn the statutorily defined phrase "medical use" into meaningless surplusage. See, e.g., *Robinson v Lansing*, 486 Mich 1, 21; 782 NW2d 171 (2010) (explaining that "it is well established that '[i]n interpreting a statute, we [must] avoid a construction that would render part of the statute surplusage or nugatory' ") (citation omitted). Although one might conceive of paraphernalia that is specifically designed for the use or internal possession of marijuana, one is necessarily stymied when attempting to identify paraphernalia that is specifically designed for the cultivation of marijuana; surely a trowel that one uses for growing cherry tomatoes could also be employed in a marijuana operation and vice versa.

The statutory definition of "medical use" is the "acquisition, possession, cultivation, manufacture, use, internal possession, delivery, transfer, or transportation of marihuana or paraphernalia relating to the administration of marihuana to treat or alleviate a registered qualifying patient's debilitating medical condition[.]" Former MCL 333.26423(e).[7] The dissents point to the use of the phrase "relating to the administration of marihuana" to suggest that objects must be used to administer or ingest marijuana in order to be considered marihuana paraphernalia. But this reading conflates the more expansive definition of "medical use" with the narrower definition of use and administration. In *McQueen*, this Court outlined the difference between the mere "use"

---

[7] See footnote 3 of this opinion.

and "administration" of marijuana, which is "*limited* to conduct involving the actual ingestion of marijuana." *McQueen*, 493 Mich at 158 (emphasis added). In contrast, this Court acknowledged that the definition of "medical use" was broader and incorporated activities such as "[t]he transfer, delivery, and acquisition of marijuana." *Id.* Therefore, a qualifying patient's transfer, delivery, acquisition, or cultivation of marijuana is a medical use according to a plain-language reading of the statute.

The use of conventional means of statutory interpretation thus leads us to hold that "marihuana paraphernalia" applies both to those items that are specifically designed for the medical use of marijuana as well as those items that are actually employed for the medical use of marijuana. In this case, defendant provided her husband, who was both a qualifying patient and a registered caregiver, with sticky notes for the purpose of detailing the harvest dates of his plants.[8] This activity constitutes the provision of "marihuana paraphernalia" because the objects were actually used in the cultivation or manufacture of marijuana. See former MCL 333.26423(e).

The provision of sticky notes in this case therefore falls within the scope of § 4(g). The prosecution is therefore prohibited from introducing or otherwise relying on the evidence relating to defendant's provision of marihuana paraphernalia—i.e., the sticky

---

[8] The trial court's contrary finding that "there is no evidence that she provided [marihuana paraphernalia] to a registered qualifying patient or registered caregiver" is clearly erroneous because elsewhere in its opinion the trial court refers to evidence that defendant's husband was a registered caregiver. It is also belied by a letter from the Department of Licensing and Regulatory Affairs, admitted by stipulation of the parties, stating that defendant's husband was a patient and a caregiver for two other patients.

13

notes—as a basis for the criminal charges against defendant.[9] If that is the only basis for criminal charges, then a successful showing under § 4(g) will result in the dismissal of charges. However, if there is additional evidence supporting criminal charges against defendant, nothing in § 4(g) prohibits the prosecution from proceeding on the basis of the remaining evidence.

## V. CONCLUSION

Although we hold that defendant is not entitled to immunity under § 4(i) of the MMMA, we conclude that the Court of Appeals erred in its interpretation of § 4(g) of the MMMA. We reverse the judgment of the Court of Appeals and remand to the circuit court for further proceedings consistent with this opinion.[10] We do not retain jurisdiction.

Richard H. Bernstein
Mary Beth Kelly
Bridget M. McCormack
David F. Viviano

---

[9] While § 4(g) grants immunity for "providing a registered qualifying patient or a registered primary caregiver with marihuana paraphernalia," immunity does not extend under that provision to other conduct, such as the use of marijuana paraphernalia. Accordingly, even if § 4(g) prohibits the prosecution from relying on defendant's provision of marihuana paraphernalia to her husband, § 4(g) does not necessarily exclude all references to the paraphernalia if the evidence supports the conclusion that defendant engaged in conduct for which she is not entitled to immunity under § 4(g).

[10] We deny leave to appeal with respect to defendant's remaining issue because we are not persuaded that the question presented should be reviewed by this Court.

14

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                No. 149290

CYNTHIA ANN MAZUR,

      Defendant-Appellant.

_____

MARKMAN, J. (*concurring in part and dissenting in part*).

I agree with the majority opinion to the extent that it holds that "a defendant claiming that he or she is solely in the presence or vicinity of the medical use of marijuana is not entitled to immunity under MCL 333.26424(i) when the medical use of marijuana was not in accordance with the act[;] [n]or is a defendant entitled to immunity under MCL 333.26424(i) when the defendant's conduct goes beyond assisting with the use or administration of marijuana," and, therefore, "defendant is not entitled to immunity under § 4(i) . . . ." However, I respectfully disagree with the majority opinion to the extent that it holds that " 'marihuana paraphernalia,' as that phrase is used in MCL 333.26424(g), includes items that are both specifically designed or actually employed for the medical use of marijuana" and that because the sticky notes at issue here were "actually used in the cultivation or manufacture of marijuana," they are "marihuana paraphernalia," and, therefore, defendant is entitled to immunity under MCL 333.26424(g). Instead, I would hold that "marihuana paraphernalia" as that phrase

is used in MCL 333.26424(g) means "any equipment, product, material, or combination of equipment, products, or materials, which is *specifically designed* for use in planting; propagating; cultivating; growing; harvesting; manufacturing; compounding; converting; producing; processing; preparing; testing; analyzing; packaging; repackaging; storing; containing; concealing; injecting, ingesting, inhaling, or otherwise introducing [marijuana] into the human body," MCL 333.7451 (emphasis added), and that because sticky notes are not "specifically designed" for any such use, they are not "marihuana paraphernalia," and therefore defendant is not entitled to immunity under MCL 333.26424(g).  Accordingly, I would affirm the judgment of the Court of Appeals.

The Michigan Medical Marihuana Act (MMMA) provides in pertinent part:

> A person shall not be subject to arrest, prosecution, or penalty in any manner . . . for providing a registered qualifying patient or a registered primary caregiver with *marihuana paraphernalia* for purposes of a qualifying patient's *medical use* of marihuana.  [MCL 333.26424(g) (emphasis added).]

Although the MMMA does not define "paraphernalia," the Controlled Substances provisions that constitute Article 7 of the Public Health Code (PHC) do.  It is well established that "[s]tatutes that address the same subject or share a common purpose are *in pari materia* and must be read together as a whole." *People v Harper*, 479 Mich 599, 621; 739 NW2d 523 (2007).  That is, "[i]t is a well-established rule that in the construction of a particular statute, or in the interpretation of its provisions, all statutes relating to the same subject, or having the same *general* purpose, should be read in connection with it, as together constituting one law, although they were enacted at different times, and contain no reference to one another." *IBM v Dep't of Treasury*, 496

2

Mich 642, 652; 852 NW2d 865 (2014), quoting *Rathbun v Michigan*, 284 Mich 521, 544; 280 NW 35 (1938) (emphasis added). "[S]tatutes *in pari materia* are to be taken together in ascertaining the intention of the legislature, and . . . courts will regard all statutes upon the same *general* subject matter as part of 1 system." *People v McKinley*, 496 Mich 410, 421 n 11; 852 NW2d 770 (2014), quoting *Dearborn Twp Clerk v Jones*, 335 Mich 658, 662; 57 NW2d 40 (1953) (emphasis added). There is no doubt that the MMMA and Article 7 of the PHC pertain to the same general subject and have the same general purpose-- the regulation of controlled substances, including, specifically, marijuana.

As this Court has explained, "the MMMA introduced into Michigan law an *exception* to the Public Health Code's prohibition on the use of controlled substances by permitting the medical use of marijuana when carried out in accordance with the MMMA's provisions." *People v Bylsma*, 493 Mich 17, 27; 825 NW2d 543 (2012) (emphasis added). "[T]he MMMA exists only as an *exception* to, and not a displacement of, the Public Health Code." *Id*. (emphasis added). An exception to a general rule cannot be fully understood when read in isolation from the general rule. This is exactly why every one of the opinions that this Court has written regarding the MMMA expressly refers to the PHC. See *People v Kolanek*, 491 Mich 382, 394 n 24; 817 NW2d 528 (2012) ("Marijuana remains a schedule 1 substance in Michigan's Public Health Code, MCL 333.7212(1)(c)."); *Michigan v McQueen*, 493 Mich 135, 148; 828 NW2d 644 (2013) ("Marijuana is a controlled substance as defined in MCL 333.7104 [of the PHC]."); *Bylsma*, 493 Mich at 27 ("[T]he MMMA introduced into Michigan law an exception to the Public Health Code's prohibition on the use of controlled substances by permitting the medical use of marijuana when carried out in accordance with the

3

MMMA's provisions."). The MMMA provides immunity, or an affirmative defense, to a violation of the PHC. Therefore, one cannot fully understand the MMMA, in particular its breadth of immunity and the scope of its affirmative defenses, without first understanding the PHC and its prohibitions.

Further, the Legislature's stated purpose for the PHC is "the protection of the health, safety, and welfare of the people of this state." MCL 333.1111(2). Likewise, the stated purpose of the MMMA is the protection of "the health and welfare of [the state's] citizens." MCL 333.26422(c). See also *Kolanek*, 491 Mich at 393-394, quoting MCL 333.26422(c) ("The purpose of the MMMA is to allow a limited class of individuals the medical use of marijuana, and the act declares this purpose to be an 'effort for the health and welfare of [Michigan] citizens.' "). Thus, the MMMA and PHC have the same general purpose-- the protection of the health and welfare of Michigan citizens. For these reasons, the MMMA and the PHC are *in pari materia* and must be read together as a whole.[1]

---

[1] The majority holds that the MMMA and the PHC are not *in pari materia* because they have "two diametrically opposed purposes." In reaching this holding the majority relies on *Palmer v State Land Office Bd*, 304 Mich 628, 636; 8 NW2d 664 (1943), which held that "although an act may *incidentally* refer to the same subject as another act, it is not in *pari materia* if its scope and aim are *distinct and unconnected*." (Emphasis added.) However, the MMMA and the PHC do not "*incidentally* refer to the same subject." Rather, the whole purpose of Article 7 of the PHC is to regulate controlled substances, including marijuana; and the whole purpose of the MMMA is to regulate marijuana. The overlap or intersection between these acts can in no way be described as "incidental." The purposes of these acts also cannot be described as being "distinct and unconnected." The purpose of both is to regulate marijuana. Just because one prohibits its use and the other allows it under limited and delineated circumstances does not make the "general purpose" of these acts "distinct and unconnected." See *id.* at 636-637 ("[A]ll statutes . . . having the same *general* purpose, should be read in connection with it, as together constituting one law, although they were enacted at different times, and contain no

4

As noted earlier in this opinion, while the MMMA does not define the term "paraphernalia," the PHC does. Specifically, the PHC defines "drug paraphernalia" as "any equipment, product, material, or combination of equipment, products, or materials, which is *specifically designed* for use in planting; propagating; cultivating; growing;

reference to one another.") (emphasis added). The majority's very narrow construction of the *in pari materia* doctrine is at odds with this Court's own prior constructions of the doctrine. For example, this Court has repeatedly recognized the "well-noted principle of construction that a subsequently enacted specific statute is regarded as an exception to a prior general one, especially if they are *in pari materia.*" *Husted v Dobbs*, 459 Mich 500, 516; 591 NW2d 642 (1999) (quotation marks and citation submitted) (this Court held in *Husted* that to the extent that the essential insurance act created an exception to the no-fault act, the two acts are *in pari materia* and thus should be read together); see also *Rathbun*, 284 Mich at 544 (this Court held in *Rathbun* that "[s]tatutes *in pari materia*, although in apparent conflict, should, so far as reasonably possible, be construed in harmony with each other, so as to give force and effect to each"); *Malcolm v East Detroit*, 437 Mich 132, 145; 468 NW2d 479 (1991) (this Court held in *Malcolm* that although the emergency medical services act created an exception to governmental immunity that is not found in the governmental tort liability act, these acts are *in pari materia* and must be read together); *State Bar v Galloway*, 422 Mich 188, 193; 369 NW2d 839 (1985) (this Court held in *Galloway* that the Michigan Employment Security Act, which allows non-lawyers to represent employers in proceedings before Michigan Employment Security Commission referees, and the unauthorized-practice of law statutes are *in pari materia* and therefore must be read together). However, under the majority's construction of this doctrine, a statute creating an exception to a prior general statute would never be *in pari materia* with the prior statute because the two would be "diametrically opposed." Indeed, the majority's construction of the *in pari materia* doctrine is inconsistent even with *Palmer* on which the majority relies. In *Palmer*, 304 Mich at 637, this Court held that "[w]here a statute embraces only part of a subject covered comprehensively by a prior law, the two should be construed together unless a different legislative intent appears; the later being an exception or qualification of the prior only so far as they are repugnant." The MMMA embraces part of a subject covered comprehensively by Article 7 of the PHC, i.e., the regulation of marijuana, and therefore these two acts should be "construed together" and the MMMA viewed as an "exception" to Article 7 of the PHC "only so far as they are repugnant." With regard to the meaning of "paraphernalia" in particular, there is nothing in either Article 7 of the PHC or the MMMA that suggests that they are "repugnant" in this regard.

5

harvesting; manufacturing; compounding; converting; producing; processing; preparing; testing; analyzing; packaging; repackaging; storing; containing; concealing; injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance . . . ."  MCL 333.7451 (emphasis added).[2]  In addition, MCL 333.7451

---

[2] Relying on this Court's decision in *Woodard v Custer*, 476 Mich 545, 563; 719 NW2d 842 (2006), in which we declined to apply the PHC's definition of "board certified" to the Revised Judicature Act (RJA) because the Legislature specifically limited the use of the PHC's definition of "board certified" to the PHC, the majority holds that we should not apply the PHC's definition of "drug paraphernalia" to the MMMA because "the Legislature specifically limited the use of the Public Health Code's definition of 'drug paraphernalia' to certain provisions of the Public Health Code."  However, the majority overlooks the critical distinction between *Woodard* and the instant case, which is that the statutes at issue in *Woodard* were not *in pari materia* and therefore this Court was not obligated to read those statutes together as a whole.  The statutes at issue in *Woodard* were the PHC and the RJA.  "The Legislature's purpose in enacting the Public Health Code was to protect the public health, safety, and welfare," while "[i]ts purpose in enacting the Revised Judicature Act . . . was to set forth the organization and jurisdiction of the judiciary and to effect procedural improvements in civil and criminal actions," which obviously is "unrelated to protecting the health, safety, and welfare of the general public."  *Woodard*, 476 Mich at 611-612 (TAYLOR, C.J., concurring).  Given that these statutes were not *in pari materia,* this Court sensibly did not apply one statute's definition of a term to an unrelated statute especially given that the former expressly stated that its definition was only to be applied to that statute.  Here, however, the statutes at issue are *in pari materia*, and thus these statutes "must be read together as a whole."  *Harper*, 479 Mich at 621.  This specific approach is consistent with this Court's precedent.  For example, in *Jennings v Southwood*, 446 Mich 125, 137; 521 NW2d 230 (1994), this Court held that "[b]ecause these provisions should be read in *pari materia*, we deem it appropriate to use the definition of gross negligence as found in [MCL 691.1407] of the [Government Tort Liability Act (GTLA)], as the standard for gross negligence under the [Emergency Medical Services Act]" even though the Legislature *specifically limited* the use of the GTLA's definition of gross negligence to the GTLA.  Similarly, in *Lindsey v Harper Hosp*, 455 Mich 56, 65; 564 NW2d 861 (1997), this Court held that it was appropriate to rely on the definition of "personal representative" found in MCL 700.9(3) of the Revised Probate Code (RPC) for purposes of interpreting that same term in MCL 600.5852 of the RJA even though the Legislature *specifically limited* the use of the RPC's definition of "personal representative" to the RPC because "[u]nder the rule of construction of statutes in pari materia, it is appropriate to harmonize statutory provisions

6

contains a nonexclusive list of items that are considered to be "drug paraphernalia," and each of the 13 pertinent subsections employs the phrase "specifically designed," which underscores that only items that are "specifically designed" to be used with controlled substances constitute "drug paraphernalia." Finally, MCL 333.7457(d) expressly *excludes* from the definition of "drug paraphernalia" things that are not "specifically designed for" drug production or use, such as bowls and spoons. Given these provisions, I agree with the Court of Appeals that "[o]bjects that serve as ordinary household and office supplies, such as sticky notes, are outside the ambit of what the Legislature contemplated when it created the paraphernalia-immunity provision." *People v Mazur*, unpublished opinion per curiam of the Court of Appeals, issued April 1, 2014 (Docket No. 317447), pp 3-4. Because sticky notes are not "specifically designed for use in planting; propagating; cultivating; growing; harvesting; manufacturing; compounding; converting; producing; processing; preparing; testing; analyzing; packaging; repackaging; storing; containing; concealing; injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance," MCL 333.7451, they are not "marihuana

---

that serve a common purpose when attempting to discern the intent of the Legislature." This approach "rests on two sound principles: (1) that the body of the law should make sense, and (2) that it is the responsibility of the courts, within the permissible meanings of the text, to make it so." Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* (St Paul Thomson-West, 2012), p 252. "Statutes," Justice Frankfurter once wrote, "cannot be read intelligently if the eye is closed to considerations evidenced in affiliated statutes." *Id*. (citation and quotation marks omitted). It simply cannot be that "drug paraphernalia" means one thing under the PHC and something entirely different under the MMMA, which, as this Court has recognized, constitutes an "exception to the [PHC]." *Bylsma*, 493 Mich at 27.

7

paraphernalia" and accordingly defendant is not entitled to immunity under MCL 333.26424(g).[3]

As also noted earlier in this opinion, MCL 333.26424(g) provides in pertinent part:

A person shall not be subject to arrest, prosecution, or penalty in any manner . . . for providing a registered qualifying patient or a registered primary caregiver with *marihuana paraphernalia* for purposes of a qualifying patient's *medical use* of marihuana. [Emphasis added.]

For the reasons already explained, sticky notes do not constitute "marihuana paraphernalia" and for that reason alone defendant is not entitled to immunity under MCL 333.26424(g). However, I agree with Justice ZAHRA, also in dissent, that there is an additional reason why defendant is not entitled to immunity under MCL 333.26424(g) and that is because defendant did not provide the sticky notes to her husband "for purposes of a qualifying patient's *medical use* of marihuana." (Emphasis added.) MCL 333.26423(e) defines "medical use" as "the acquisition, possession, cultivation, manufacture, use, internal possession, delivery, transfer, or transportation of marihuana or *paraphernalia relating to the administration of marihuana* to treat or alleviate a registered qualifying patient's debilitating medical condition or symptoms associated with the debilitating medical condition."[4] (Emphasis added.) This Court has already

---

[3] During oral argument, defendant's own attorney recognized that "paraphernalia is defined as something that is specifically intended for the use or help in manufacture," and stated, "I don't think the post-it note is paraphernalia" because "the post-it note is not specifically designed to aid in the manufacture of marijuana." Defendant's attorney's real concern in this case is the prosecutor's reliance on these sticky notes as evidence that defendant aided and abetted her husband in manufacturing marijuana. However, that seems to be more of a "sufficiency of the evidence" question, which, as the majority recognizes, is not now before this Court.

[4] At the time this action arose, the definition of "medical use" was found in

8

explained that "administering" marijuana "involv[es] the actual ingestion of marijuana." *McQueen*, 493 Mich at 158. Therefore, even assuming that the sticky notes at issue here constitute "marihuana paraphernalia," which, for the reasons already discussed I do not believe they do, they most certainly do not constitute "paraphernalia relating to the administration of marihuana" as they were in no way used, or intended to be used, to "administer" or "ingest" marijuana. That is, even assuming that the sticky notes *are* "marihuana paraphernalia," defendant is still not entitled to immunity because she did not provide her husband with the sticky notes "for purposes of a qualifying patient's medical use of marihuana" since "medical use" in this context means the "transfer . . . of . . . paraphernalia relating to the administration of marihuana," and defendant's transfer of the sticky notes to her husband was not done for purposes of administering marijuana.[5] Instead, if anything, defendant's transfer of the sticky notes with harvest dates on them to her husband was done for purposes of assisting her husband in the cultivation or manufacture of marijuana. These sticky notes were not, nor were they ever intended to

---

MCL 333.26423(e). This same definition is now found in MCL 333.26423(f).

[5] Contrary to the majority's contention, I do not "conflate[] the more expansive definition of 'medical use' with the narrower definition of use and administration." In fact, I agree with the majority that the statutory definition of "medical use" "incorporate[s] activities such as '[t]he transfer, delivery, and acquisition of marijuana.' " What the majority does not recognize, however, is that unlike the transfer of *marijuana*, which does not have to "relat[e] to the administration of marihuana" in order to fall within the definition of "medical use," the transfer of *paraphernalia* does have to do so. See MCL 333.26423(e) (defining "medical use" as "the acquisition, possession, cultivation, manufacture, use, internal possession, delivery, transfer, or transportation of marihuana *or paraphernalia relating to the administration of marihuana* to treat or alleviate a registered qualifying patient's debilitating medical condition or symptoms associated with the debilitating medical condition") (emphasis added).

9

be, used to administer or ingest marijuana. Accordingly, for this additional reason, defendant is not entitled to immunity under MCL 333.26424(g).[6]

Because I agree with the Court of Appeals that defendant is not entitled to immunity under either MCL 333.26424(i) or MCL 333.26424(g), I would affirm the judgment of the Court of Appeals.

Stephen J. Markman

---

[6] Although the majority opinion recognizes that "defendant here was not merely assisting her husband with conduct involving the actual ingestion of marijuana" but was instead "assisting in the cultivation of marijuana" and that this does not constitute assistance with 'using' or 'administering' marijuana," the majority overlooks that this necessarily means that defendant did not provide the sticky notes to her husband "for purposes of a qualifying patient's *medical use* of marihuana" and that, therefore, defendant is not entitled to immunity under MCL 333.26424(g).

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                          No. 149290

CYNTHIA ANN MAZUR,

      Defendant-Appellant.

_____

ZAHRA, J. (*concurring in part and dissenting in part*).

I agree with Part IV(A) of the majority opinion, which concludes that defendant is not entitled to immunity under § 4(i) of the Michigan Medical Marihuana Act (MMMA), MCL 333.2624(i).  I write separately because I respectfully disagree with the conclusion reached in Part IV(B) of the majority opinion, which holds that " 'marihuana paraphernalia,' as that phrase is used in MCL 333.26424(g), includes [any] items that are . . . employed for the medical use of marihuana."  I therefore disagree with the proposition that because the sticky notes at issue here were "used in the cultivation or manufacture of marijuana," they are "marihuana paraphernalia" entitling defendant to immunity under MCL 333.26424(g).  In my view, when reading the MMMA as a whole and with an eye toward producing a harmonious and consistent enactment, marijuana paraphernalia must be an item or items intended to assist in the administration of marijuana to a qualifying patient under the MMMA.  Because the sticky notes in question here were not used for the administration of marijuana to a qualifying patient, defendant's

act of assisting her husband with the cultivation and manufacture of marijuana through the use of sticky notes was not immune under MCL 333.26424(g). Accordingly, I would affirm the judgment of the Court of Appeals.

The statute at issue, MCL 333.26424(g), states in relevant part:

> A person shall not be subject to arrest, prosecution, or penalty in any manner . . . for providing a registered qualifying patient or a registered primary caregiver with marihuana paraphernalia for purposes of a qualifying patient's medical use of marihuana.

Without citing any rule of statutory construction that gives deference to an adjacent phrase, the majority does just that by relying on the adjacent phrase "medical use of marihuana," including the expansive statutory definition of medical use under former MCL 333.26423(e),[1] to define marijuana paraphernalia in a manner in which the meaning of marijuana paraphernalia "cannot be so limited as to only include those items that are specifically designed for the medical use of marijuana." Other than grammatical proximity, there is apparently no other justification offered for subverting the phrase "marihuana paraphernalia" in favor of an overly broad definition of "medical use" of marijuana. Having determined that the phrase "marihuana paraphernalia" is subservient to the phrase "medical use" the majority asserts that the phrase, " 'for purposes of a qualifying patient's medical use of marihuana' indicates that an item may or may not be

---

[1] Former MCL 333.26423 was amended by 2012 PA 512, but the definition of "medical use" provided under former MCL 333.26423(e) was retained with identical content. See MCL 333.26423(f). Because former MCL 333.26423(e) was in place at the time this action arose, this opinion will refer to that statute when addressing the definition of "medical use."

2

'marihuana paraphernalia,' depending on the use to which it is put." I respectfully disagree.

A plain reading of MCL 333.26424(g) reveals that a person claiming immunity must have provided (1) marijuana paraphernalia (2) to a registered qualifying patient or a registered primary caregiver (3) for purposes of a qualifying patient's medical use of marijuana. The third element does not explain the meaning of marijuana paraphernalia. Rather, the third element defines the specific intent of the person claiming immunity for providing marijuana paraphernalia. By defining marijuana paraphernalia in terms of medical use, however, the majority has improperly conflated the meaning of marijuana paraphernalia with the specific intent of the person providing marijuana paraphernalia to a registered qualifying patient or a registered primary caregiver. Specific intent involves "a subjective standard,"[2] which is "[a] legal standard that is peculiar to a particular person and based on the person's individual views and experiences."[3] Thus, by holding that an item "may or may not be 'marihuana paraphernalia,' depending on the use to which it is put," the majority has placed the meaning of "marihuana paraphernalia"—as with . . . "[b]eauty . . . in things"—"merely in the mind which contemplates them[.]"[4] In doing so, the majority improperly renders the phrase "marihuana paraphernalia" impotent and without any discernable independent meaning. Under the majority's holding

---

[2] *Frankenmuth Mut Ins Co v Masters*, 460 Mich 105, 109; 595 NW2d 832 (1999).

[3] See *Black's Law Dictionary* (9th ed.).

[4] 1 Hume, *Essays and Treatises on Several Subjects* (1760), p 368.

3

MCL 333.26424(g) provides that an individual may claim immunity "for providing a registered qualifying patient or a registered primary caregiver with [*anything imaginable*] for purposes of a qualifying patient's medical use of marihuana." Because this interpretation fails to provide any discernable independent meaning to the phrase "marihuana paraphernalia," the majority's interpretation has in part rendered MCL 333.26424(g) nugatory.[5]

The majority's definition of marijuana paraphernalia is also not consistent with the definition of the medical use of marijuana in former MCL 333.26423(e).[6] MCL 333.26424(g) provides that a person may have immunity when providing marijuana paraphernalia to either a registered qualifying patient or a registered primary caregiver, but, importantly, only if the marijuana paraphernalia is intended for a registered qualifying *patient's* medical use of marijuana. No immunity is provided if the marijuana paraphernalia is intended for a registered *primary caregiver's* medical use of marijuana. A person cannot provide marijuana paraphernalia for *any* intended medical use merely because the broad definition of medical use includes uses for both a registered qualifying patient and a registered primary caregiver. Former MCL 333.26423(e) defines "medical use" broadly as

> the acquisition, possession, cultivation, manufacture, use, internal possession, delivery, transfer, or transportation of marihuana *or paraphernalia relating to the administration of marijuana to treat or*

---

[5] See *Apsey v Mem Hosp*, 477 Mich 120, 131; 730 NW2d 695 (2007), citing *Black's Law Dictionary* (7th ed) (defining "nugatory" as "of no force or effect; useless; invalid").

[6] See footnote 3 of this opinion.

4

*alleviate a registered qualifying patient's debilitating medical condition or symptoms associated with the debilitating medical condition.*[7]

While this definition includes broad protections for both registered qualifying patients and registered primary caregivers, MCL 333.26424(g) limits immunity for providing marijuana paraphernalia for only a registered qualifying *patient's* medical use of marijuana. Plainly, "cultivation" and "manufacture" do not pertain to a registered qualifying patient's medical use of marijuana.[8]

But, more importantly, the majority ignores the portion of former MCL 333.26423(e) that limits the medical use of paraphernalia to only that which is "relating to the administration of marijuana." It is a long-accepted principle of statutory interpretation that an "entire act must be read and the interpretation to be given to a particular word in one section arrived at only after due consideration of every other section so as to produce, if possible, a harmonious and consistent enactment as a whole."[9] Rather than rendering the term "marihuana paraphernalia" subservient to the phrase

---

[7] Emphasis added.

[8] We nonetheless observe that a patient may manufacture marijuana for personal medical use as long as the patient did not elect to have a primary caregiver manufacture the marijuana on the patient's behalf. In the absence of this election, we often refer to the patient as being his "own caregiver," but technically the patient is not his "own caregiver." The patient simply is a patient who has not made the caregiver election. Thus, a patient who did not make the caregiver election may cultivate and manufacture marijuana for personal medical use as permitted in the MMMA. See MCL 333.26426(a)(7).

[9] *Grand Rapids v Crocker*, 219 Mich 178, 182-183; 189 NW 221 (1922). See also *People v Cunningham*, 496 Mich 145, 153-154; 852 NW2d 118 (2014).

"medical use," the majority should have sought to render the two provisions harmonious and consistent.

The definition of "medical use" of marijuana explains that paraphernalia has a more limited meaning that does not, contrary to the majority's reasoning, "depend[] on the use to which it is put." Former MCL 333.26423(e) expressly limits the "medical use" of "paraphernalia" to only that which is "relating to the *administration* of marijuana."[10] "Administering" marijuana, as the majority states, is " 'limited to conduct involving the actual ingestion of marijuana.' "[11] Therefore, while, as the majority notes, medical use is "a broader term than mere use or administration," the medical use of paraphernalia is limited only to the *administration*, or "actual ingestion," of marijuana. This limitation of paraphernalia is entirely consistent with the language in MCL 333.26424(g) that provides a person may have immunity for providing marijuana paraphernalia to either a registered qualifying patient or a registered primary caregiver, but, again, only if the marijuana paraphernalia is intended for a registered qualifying patient's use or administration of marijuana.

There is no dispute that marijuana paraphernalia is not expressly defined under the MMMA. But from the definition of "medical use" of marijuana, we glean that paraphernalia only relates to the administration of marijuana to a qualifying patient. While a person may still claim immunity if he or she were to provide marijuana

---

[10] Emphasis added.

[11] Quoting *Michigan v McQueen*, 493 Mich 135, 158; 828 NW2d 644 (2013).

6

paraphernalia to a registered patient or a primary caregiver, the person must have ultimately intended the paraphernalia be used for the administration of a registered qualifying patient's medical use of marijuana.

The majority appropriately turns to a common dictionary to give the phrase "marijuana paraphernalia" meaning. The majority notes that "[p]araphernalia" is defined as " 'equipment, apparatus, or furnishings used in or necessary for a particular activity.' "[12] But the majority then goes on to say "[n]othing in this definition states that a specific design must be intended." I agree that the definition does not contain the actual phrase "specifically designed," but the definition does refer to "a particular activity." This language suggests that paraphernalia is indeed particular, i.e., specific, to a definite purpose. In my view, the common definition of paraphernalia certainly would not exclude equipment, apparatus, or furnishings specifically intended for a particular activity, such as administering marijuana. One would be hard-pressed to conclude that paraphernalia is equipment, apparatus, or furnishings that have not been specifically intended "to be used in or necessary for a particular activity." Yet the majority contends that "[t]o only include items [as marijuana paraphernalia] that were *specifically designed* for the medical use of marijuana would be to turn the statutorily defined phrase 'medical use' into meaningless surplusage." I disagree. The phrase "medical use" is statutorily defined in former MCL 333.26423(e) (and as retained in current MCL 333.26423(f)) and its meaning is law. That is, the definition of medical use is independent from and neither

---

[12] Quoting *Random House Webster's College Dictionary* (2005).

subverts nor dilutes the meaning ascribed to any nonstatutorily defined phrase, including marijuana paraphernalia.

In this case, when applying the relevant provisions of former MCL 333.26423(e) and MCL 333.26424(g) along with the common definition of paraphernalia, it is clear that the phrase "marihuana paraphernalia" includes equipment, apparatus, or furnishings specifically intended for the administration of marijuana to a registered qualifying patient. The phrase "marihuana paraphernalia" under former MCL 333.26423(e) simply does not include paraphernalia related to the role of a registered primary caregiver.

Further, the essence of the rule of law is to know in advance the rules of society.[13] Accordingly, the meaning given to the phrase "marihuana paraphernalia" must be ascertainable *before* a person provides marijuana paraphernalia, not afterwards. The majority opinion, however, attempts to define marijuana paraphernalia as that which is "actually employed for the medical use of marijuana." This retrospective definition of "marihuana paraphernalia" based solely on how equipment, apparatus, or furnishings *has been used* offers little guidance to a person assessing whether his or her future conduct complies with the rule of law.

I would hold that the phrase "marihuana paraphernalia" includes equipment, apparatus, or furnishings and refers to items specifically intended for the administration of marijuana to a qualifying patient. Because there is no dispute that the sticky notes at issue here are not equipment, apparatus, or furnishings specifically intended for the

---

[13] *Robinson v Detroit*, 462 Mich 439, 467; 613 NW2d 307 (2000).

administration of marijuana to a qualifying patient, they are not marijuana paraphernalia under MCL 333.26424(g), and therefore defendant is not entitled to immunity. Accordingly, I would affirm the judgment of the Court of Appeals.[14]

Brian K. Zahra
Robert P. Young, Jr.

---

[14] The Court of Appeals concluded that the MMMA should be read *in pari materia* with the Public Health Code. "Statutes that address the same subject or share a common purpose are *in pari materia* and must be read together as a whole." *People v Harper*, 479 Mich 599, 621; 739 NW2d 523 (2007). There is no doubt that the MMMA and the Public Health Code relate to the same general subject and have the same general purpose of regulating controlled substances, including marijuana. Because I rely on the actual language of the MMMA, though, I do not rely on the *in pari materia* canon to affirm the holding of the Court of Appeals in this case. The majority, however, erroneously finds error in the Court of Appeals' application of *in pari materia*, concluding that the MMMA and the Public Health Code are "distinct and unconnected." This is simply not true. Without the Public Health Code's regulation of marijuana, there would be no need for the MMMA's exception. Also of significance is the fact that in previous opinions interpreting the MMMA, this Court has repeatedly refered to the Public Health Code without concluding that it is "distinct and unconnected" from the MMMA. See *People v Kolanek*, 491 Mich 382, 395 n 24; 817 NW 2d 528 (2012) ("Marijuana remains a schedule 1 substance in Michigan's Public Health Code, MCL 333.7212(1)(c)."); *McQueen*, 493 Mich at 148 ("Marijuana is a controlled substance as defined in MCL 333.7104 [of the Public Health Code]."); *People v Bylsma*, 493 Mich 17, 27; 825 NW2d 543 (2012) ("[T]he MMMA introduced into Michigan law an exception to the Public Health Code's prohibition on the use of controlled substances by permitting the medical use of marijuana when carried out in accordance with the MMMA's provisions.").